## BLACK, SIVALLS & BRYSON, Inc., v. OPERATORS' OIL & GAS CO. et al.

### No. 742.

Court of Civil Appeals of Texas. Eastland.

March 13, 1931.

Rehearing Denied April 10, 1931.

Phillips, Trammell, Chizum, Price & Estes and Charles L. Terry, all of Fort Worth, for appellant.

Jones & Brown, James G. Harrell, and L. D. Hawkins, all of Breckenridge, for appellees.

314

·FUNDERBURK, J.

This suit is one brought by Black, Sivalls & Bryson, Inc., to recover for a debt of $1,138.-99 as against Operators' Oil & Gas Company and W. J. Rhodes (the latter alleged to have assumed payment of the debt), and for foreclosure of an asserted statutory and constitutional mechanics' and materialmen's lien upon certain property as against said defendants, and also Mollie B. Baker and Fred R. Baker. The debt was claimed as due for five oil tanks and appliances in connection therewith, and for work in "straightening up" one of the tanks and "repairing grade which had been washed away by flood of the De Leon River." It was alleged that the five tanks and certain appliances were sold and delivered on April 30, 1928, as per an invoice of that date, and that the item charged for straightening up the flow tank and repairing grade was on May 31, 1928. The affidavit for mechanics' and materialmen's lien was filed October 20, 1928. Upon the trial of the case the court gave a peremptory instruction to find for the plaintiff for the amount of the account against the defendant Operators' Oil & Gas Company, and in favor of the other defendants as against plaintiff that plaintiff take nothing. The judgment of the court rendered upon the verdict returned in accordance with the instruction denied plaintiff a foreclosure against any of the defendants on its alleged constitutional and statutory lien. The plaintiff has appealed.

All questions presented are believed to be dependent upon and determined by, or, if not, rendered immaterial by, the decision of two questions. One is: Was there any evidence to authorize the submission to the jury of the issue of whether the indebtedness sued on was, by agreement of the parties, to become due sixty days after the date of delivery of the property? The other is: Did the pleadings and evidence authorize recovery against Rhodes and the Bakers on the ground that plaintiff, independently of any statute, had a constitutional lien of which said parties had constructive notice?

■ As to the first question, if there was no such evidence of an agreement that the indebtedness was to become due sixty days after delivery of the tanks, the peremptory instruction was correct, unless there was an enforceable constitutional lien. According to the foregoing statement, the filing of the account and affidavit designed to fix the lien was more than five months after the date of delivery of the last item of property. Under provision of the statute there was no lien unless there was an agreement of the parties to pay at a specified time different from the date of delivery, and within four months prior to the date of filing. R. S. 1925, art. 5467. Treating the allegations of plaintiff's petition as asserting an agreement that the indebtedness was to become due sixty days after delivery of the goods, let us examine briefly the evidence, if any, tending to establish such agreement. The contract of sale was made by E. H. Rider, as agent for plaintiff, and one Prosper, as agent for the purchaser. The testimony of Rider very clearly shows that it was his theory that the indebtedness was due sixty days after delivery, because that was the seller's usual and customary terms. There was no pleading of such custom or of Prosper's knowledge of such custom. In the absence of such pleading we need only look for evidence of an express agreement, or evidence of facts from which the agreement would be implied. The testimony shows that the written order or invoice was not signed by Prosper, but Prosper's name was written thereon by Rider after the sale was completed and without Prosper's knowledge or authority. It is therefore apparent that, when Rider says that the goods were sold upon their regular terms, he but stated his own conclusion, the effect of which, if any, was completely destroyed by further testimony. He further testified: "I can't swear that I did or did not use the expression 'regular terms' when talking to Mr. Prosper. * * * I did not specify thirty or sixty days and I did not explain or talk to Mr. Prosper about what the regular terms were." This testimony, being fully explanatory of all of the other testimony offered on the question, we think, must be held to constitute no evidence raising an issue for the jury as to the existence of such an agreement.

■ It seems to be the position of appellant that the testimony last quoted is at most merely conflicting with that given to the effect that the goods were sold on regular terms of sixty days, and that therefore a jury question was presented, under such authorities as Williams & Chastain v. Laird (Tex. Civ. App.) 32 S.W.(2d) 502; Funk v. Miller (Tex. Civ. App.) 142 S. W. 24; Melburn v. Webb (Tex. Civ. App.) 277 S. W. 800; Davis v. Petroleum Casualty Co. (Tex. Civ. App.) 13 S.W.(2d) 981; Farmers' Gin Co. v. Smith (Tex. Civ. App.) 28 S.W.(2d) 839; Threadgill v. Shaw (Tex. Civ. App.) 148 S. W. 825. These cases, we think, rightly interpreted, go no further than to hold that, where there is uncertainty in the real purport of a party's entire testimony produced by apparent inconsistencies in parts thereof, a jury question is presented. Such is not the case here. A good statement of the rule applicable here is given by the editor to the note following Harlow v. Laclair, 50 A. L. R. 973, as follows: "An examination of the decisions reveals that when a party testifies to positive and definite facts which, if true, would defeat his right to recover or conclusively show his liability, and such statements are not subsequently modified or explained by him so as to show that he was mistaken although testifying in good faith, it has gen-

erally been held that he is conclusively bound by his own testimony, and cannot successfully complain if he is nonsuited or the court directs a verdict against him." If a party in testifying makes a statement in the nature of a conclusion or opinion, or perhaps even of a fact proper which other parts of his testimony, dealing with more specific facts, show to be erroneous, and leaves the real meaning of his, testimony as a whole, such that he has no right of recovery or shows no liability of the other party, only a question of law is presented. For instance, in Mhoon v. Cain, 77 Tex. 316, 14 S. W. 24, 25, a party, having the burden of proving the time an adverse possession had continued, testified that it had continued ever since his entry upon the land. If this were true, he had a right to recover. Specific facts testified to by him, however, showed that a part of the time the possession was not adverse as a matter of law. This being true, he had no right to recover. The court said of this testimony: "This was, however, only his opinion. When he explains the character of his possession as under expectation or intention of buying the land from the owner, we see that his opinion was incorrect." In this case, just as certainly as in that, the specific facts testified to produce no uncertainty in the import of the entire testimony, but certainly disclose a mistaken conclusion on the part of Rider that the sale as actually made included an agreement that the due date of the indebtedness was to be sixty days after delivery of the goods. The testimony, therefore, raised no issue to be submitted to the jury.

■ The next question arises out of the contention that, regardless of the existence of a special agreement as to the due dates of the account, appellant had a lien given by the Constitution, which required no filing. The Constitution, art. 16, § 37, gives a lien to "mechanics, artisans and material men, of every class * * * upon the buildings and articles made or repaired by them, for the value of their labor done thereon, or material furnished therefor." This lien, when it exists, is enforceable as between the parties having the relation of owner and original contractor, without filing the contract or account. Ball v. Davis, 118 Tex. 534, 18 S.W.(2d) 1063; Farmers' & Mechanics' Nat. Bank v. Taylor, 91 Tex. 78, 40 S. W. 876, 966; Strang v. Pray, 89 Tex. 525, 35 S. W. 1054, 1056.

■ But the statutory requirement as to filing and time of filing must be complied with to make even a constitutional lien enforceable as against a subsequent bona fide purchaser. Strang v. Pray, 89 Tex. 525, 35 S. W. 1054, 1056; De Bruin v. Santo Domingo L. & Irr. Co. (Tex. Civ. App.) 194 S. W. 654; Kinsey v. Spurlin (Tex. Civ. App.) 102 S. W. 122; D. June & Co. v. Doke, 35 Tex. Civ. App. 240, 80

S. W. 402; Beilharz v. Illingsworth, 62 Tex. Civ. App. 647, 132 S. W. 106.

The statute is but a reasonable regulation authorized by the Constitution itself, serving the purpose, among other things, as held in Strang v. Pray, supra, "to protect subsequent purchasers by the record of the contract and bill of particulars."

■■ The plaintiff's petition shows that the owner of the property on which the constitutional lien is claimed was no longer such owner, but that the property had been transferred by him, first to W. J. Rhodes and by the latter to Fred R. Baker and Millie B. Baker. In order to make good the assertion of a constitutional lien as against the vendees of said original owner, or to charge them with conversion of the property, it was necessary to allege and prove that such a contract or claim of lien was duly filed in order to charge them with constructive notice, or that they had actual knowledge of the facts, or for some other reason were not bona fide purchasers. There was no basis in the pleading or evidence to hold them liable upon any other theory than that the filing of the lien constituted constructive notice. The claim of a lien was filed October 23, 1928, one day before the transfer to Rhodes and by Rhodes to the other parties. The inquiry is therefore narrowed down to a consideration of the question: Did the filing of the account and affidavit afford constructive notice that appellant, as a mechanic or artisan, had done labor in making or repairing a building or article, or as a materialman had furnished material for the making or repairing of a building or article? Except for one small item designated, "Straightened up flow tank, (210 bbl.) and repaired grade which had washed away by flood of De Leon River......$30.00," the account itself and the accompanying affidavit implies the exclusion of a claim on the part of appellant of a constitutional lien. If tanks under any circumstances are buildings within the meaning of the constitutional provision, they are not necessarily such. We do not hesitate to say that the one tank which was sold and delivered in a finished state was not a building made. For aught the claim of a lien shows, all of the tanks were so sold and delivered. All of the items of the account were referred to as "goods, wares and merchandise" and were asserted to have been sold for agreed prices. It therefore becomes unnecessary for us to determine whether the other tanks, as to which the materials were delivered upon the lease in a knocked-down condition and then put together to form same, should be regarded as buildings made. That question would require decision only if the original parties were involved. We conclude that the filing of the lien did not give notice of the existence of a constitutional lien unless as to the $30 item next to be noticed.

The $30 item reading, "Straightened up flow tank, (210 bbl.) and repaired grade which had washed away by flood of DeLeon River," shows a claim for labor performed. For the value of such labor to be secured by constitutional lien it must have been done in making or repairing a building or an article. We have already held that a tank, if a building under any circumstance, is not necessarily such. The repairing of a grade washed away by flood was neither the making nor repairing of a building or an article within the terms of the constitutional provision. The tank, we think, was an article, but the affidavit and account made no claim for repairs to the tank. If "straightened up" the tank could be considered the equivalent of "repaired the tank," the filing of the affidavit and account carried no constructive notice of a constitutional lien, since it made no claim for any particular amount for that particular service.

But, if the filing of the affidavit and account should be held sufficient to give notice of a constitutional lien for the $30, it would not necessarily follow that the trial court erred in giving the peremptory instruction. Other than the account and affidavit the only evidence in the record relative to this item was the testimony of E. H. Ridor, branch manager for appellant, which we quote in full, as follows: "Along in May Mr. Proctor called me on the telephone one morning and asked me to do some repair work on the flow tank, and I sent our man down to do the repair work. In that particular case I do not recall the reasonable value of the services of the man employed and used by our company in making the repair. No price was asked and none was quoted. I was familiar with the value of repairs at that time and at that place. Under the conditions the price of $30.00 as placed on this item was reasonable price for labor for the repair done at that time." This evidence shows that this item involved an independent contract, and therefore had no connection with the other items in the account. There was no evidence identifying the tank in question, nor to show that possession thereof ever passed to the assignees of the oil and gas lease. While a constitutional lien upon a building has by judicial construction been held to extend to the land upon which the building is located, we are not prepared to hold that a lien upon an article made would extend to anything other than such article. There was no evidence whatever to show that any amount was due for "straightening up tanks." There was, therefore, as respects this item, no issue for the jury, and the action of the court in giving the peremptory instruction was proper.

In Ball v. Davis, 118 Tex. 534, 18 S.W.(2d) 1063, 1067, a constitutional lien was claimed on the ground that machinery or something connected with the drilling of a well was repaired. There was evidence by plaintiff that, "When it got out of order I repaired the machine myself," and by another witness that, "I helped repair the machine." The Supreme Court said: "What either of them did, or what machine was repaired, or what part of the machine they repaired, the testimony does not show." The existence of the lien was denied, and we think the same thing may be said of the evidence in this case.

It is therefore our opinion that the judgment of the trial court should be affirmed, and it is accordingly so ordered.