## PRESIDENTAL LIFE INSURANCE COMPANY, Appellant,

v.

## Thomas G. CALHOUN, Appellee.

### No. 15494.

Court of Civil Appeals of Texas. Dallas.

May 22, 1959.

Rehearing Denied June 26, 1959.

Renfro & Johnson, Dallas, for appellant.

DeShazo & Hyde, Dallas, for appellee.

YOUNG, Justice.

The suit in trial court was for commissions on insurance written, together with attorney's fee allowed on an alleged contract of employment had with appellant and later reduced to writing. Following a jury trial and their answers to special issues, judgment was rendered for $4,608.33 plus $1,000 attorney's fee or a total recovery of $5,608.33 and interest. An appeal therefrom has been duly prosecuted.

The jury issues and answers are next summarized: (1) That a written memorandum of employment of plaintiff, Calhoun, was executed by Garth W. Daniel on behalf of defendant company; (2) that said defendant agreed to pay plaintiff a commission on all·initial premiums on life and hospitalization insurance written by the company during his employment; (3) that the company agreed to pay plaintiff as a commission, a percentage of ten per cent on such initial premiums; (4) that defendant agreed to pay plaintiff a commission on renewal premiums of life and hospitalization insurance written by the company during the term of his employment; (5) which percentage on renewal premiums referred to in preceding issue was five per cent; (6) plaintiff rendered personal services to defendant during his employment with such company; (7) defendant accepted the benefits of the services so rendered by plaintiff. In this connection, the Court's judgment of March 26, 1958 had taken into account above findings 4 and 5 (on renewal premiums) but in amended judgment rendered May 7, 1958, such additional amounts were

eliminated; the court finding that defendant had "admitted receipt of first year premiums in total amount of $75,376.03;" plaintiff being entitled to ten per cent thereof, less a credit of $2,929.27 in advances; or a net recovery of $4,608.33 plus the item of attorney's fee, which made up the judgment appealed from. National Banker's Life Insurance Co., also included as party defendant, was dismissed from the suit on motion for instructed verdict.

Appellant's ten points of error will also be summarized: The court's error in refusal to grant its motion for instructed verdict, appellee having wholly failed to show execution of any contract in writing or authority of Garth Daniel to negotiate same on behalf of the company; error in submission of Issues 2 through 7 as not supported by pleading relating to a written contract and constituting issues on quantum meruit, not pled; error in rendition of plaintiff's judgment because the overwhelming preponderance of evidence shows that he had no written contract with defendant company executed in its behalf by anyone authorized to do so; error in admission of the hearsay testimony of Elmer Adams as to terms of plaintiff's employment; said testimony showing that Adams had no personal knowledge of such terms; and error in rendering judgment on the court's independent findings that a certain amount of premiums were received by defendant.

Plaintiff's employment with defendant company as agency manager began March 10, 1952, ending April 29, 1953. He pled that the agreement therefor was made with Ross Kennedy, chairman of defendant's Board of Directors, and Garth Daniel, its president, reduced to writing in July or August 1952 and signed by himself and Daniel on the following terms: A salary of $50 per week and additionally plaintiff was to be paid a commission of ten percent on all first year premiums collected on life and hospitalization insurance policies sold by the company, and a commission of five percent on renewal premiums collected on life and hospitalization policies until said policies had been in force for ten years; plaintiff to be allowed a drawing account of $50 per week to be charged against commissions earned, as above mentioned. His allegations included a demand that defendant produce said written contract of employment at the trial of said cause or in lieu thereof secondary evidence would be offered of its contents.

In 1952 Garth Daniel was president of defendant company and Ross Kennedy chairman of the board of directors, its stock owned by Banker's Discount Corporation. Later on, this holding company went into bankruptcy and on July 9, 1953 all capital stock and assets of Presidental Life Insurance Company was purchased from the receiver by Lester Hall, who became president, and M. E. Gregory, secretary-treasurer. These executive officers testified at the trial to having in possession all books and records of the reorganized company; making diligent search through antecedent company minutes, records and files for the Calhoun employment contract, finding no evidence of its existence; first learning of plaintiff's claim for commission by letter from his attorney. Garth Daniel (now deceased) testifying by deposition stated that he had no recollection of signing an agency contract with Calhoun in 1952 carrying any such provisions for commissions on first year premiums.

On the other hand, plaintiff testified in line with his pleadings to terms of the employment contract—$50 per week and $50 weekly advances; and to a further proviso for percentages on first year premiums and renewals collected by the company; the terms thereof being reduced to writing in July or August 1952, signed by him, initialed by Garth Daniel; that only one copy was thus executed and placed by Daniel in a desk drawer; that he had fully performed all duties as agency manager, receiving the weekly cash compensation but not the claimed overriding commissions.

On the same subject, Elmer Adams was permitted to testify over objection by defendant as follows: That he was vice president of the company from middle of 1953 to October or November of that year.

"Q. Did you at any time ever discuss with Mr. Garth Daniel and Ross Kennedy, in your official capacity, the pay or the type of pay that Mr. Calhoun was to receive for his work? A. Upon two occasions I did. * * *

"Q. What were the arrangements? A. The arrangements, as told to me by both Mr. Kennedy and Mr. Garth Daniel, was that Mr. Calhoun was to receive as salary $50 per week and a $50 a week advance, which, of course, was based upon a four week month and would be $200 salary and $200 advance against his commissions overriding commissions.

"Q. Now, the overriding commissions, what was that amount? A. That was the thing that I discussed each time, also. The overriding commission was an amount equal to 10 percent of the first year's premium paid into the company on both life and hospitalization. Now, they had a credit life department but he was not to share in that at all. On subsequent, which we called renewal premiums paid into the company, he was to receive an overriding commission of five percent. * * *

"Q. Now, during the time that you were there who was it that operated the company, did the hiring and the firing and the employing of the personnel and the people that worked there? A. Well, the final hiring and firing of key personnel was done either by Mr. Garth Daniel or Ross Kennedy."

Contrary to the contention of appellant, secondary evidence was permissible under the testimony of defense witnesses, tending to establish execution of the contract in question; Calhoun's testimony having placed the only copy thereof as in possession of the company, it denying possession or even its existence. McCormick & Ray, Evidence, 2nd edition, Sections 1569, 1577.

■ It is not disputed that plaintiff was employed as agency manager over the stated period; defendant asserting that his compensation was to be the weekly salary and advances and no more; there being no proof of authority from the Board of Directors for further compensation to plaintiff by way of commissions on first year premiums. It is true that no issue was submitted with respect to authority of Daniel to make the agreement sued upon. Nevertheless, under the testimony of Calhoun and Adams, a performance by plaintiff of his contract of employment with notice and acquiescence by defendant's chief executive officers of its terms, in our opinion, would bind the corporation, Crosby County Cattle Co. v. Davis, Tex.Civ.App., 28 S.W.2d 1098, on grounds either of estoppel as reflected in Issue 7 of the Court's charge or ratification; Banker's Trust Co. v. Cooper, Merrill & Lumpkin, Tex.Civ. App, 179 S.W. 541; Merchants' Ice Co. v. Scott & Dodson, Tex.Civ.App., 186 S.W. 418; Knowles v. Northern Texas Traction Co., Tex.Civ.App., 121 S.W. 232.

■■ Nor was the testimony of Adams subject to the objection as hearsay. He was also an executive officer of the company; and the discussion with Daniel and Kennedy respectively on the subject in question was in his official capacity. Information relating to operations of the company obtained by him from other company officials is properly admissible; bearing, as it does, on their recognition of plaintiff's contractual status. "The declarations made by an officer or agent of a corporation, in response to timely inquiries, properly addressed to him and relating to matters under his charge, in respect to which he is authorized in the usual course of business to give information, may be given in evidence against the corporation * * *". West Texas Produce Co. v. Wilson, (Su-

preme Ct. adopted) 120 Tex. 35, 34 S.W.2d 827, 829.

■ However, point ten should be sustained; the Court's rendition of judgment based on a first year premium income received by defendant not being conclusively admitted, the same thereby became a jury question. Plaintiff had alleged (denied by defendant) that these premiums from March 10, 1952 to April 29, 1953 were in amount of $77,241.59; testifying generally to defendant's receipt over the same period of some $76,000 in initial premium income. Pursuant to Rule 169, Texas Rules of Civil Procedure, plaintiff had made request on defendant for admissions to effect that defendant had received in first year premiums (life and hospitalization) from March 10 to December 31, 1952 a total of $31,312.69; and $45,928.90 in similar premiums from January 1, 1953 to April 29, 1953. Defendant's answers four and eight covering the same period were as follows: "This defendant says that the facts it is here asked to admit are not correct for the period of time designated, that is, between March 10, 1952 and December 31, 1952. This defendant says its premium income was as follows: Initial hospitalization premiums —$22,349.10 and initial life insurance premiums $438.89. * * * In answer to request No. 8, this defendant says that it collected initial premiums for hospitalization insurance during the period mentioned in the amount of $19,759.72 and life insurance premiums in the amount of $840.71."

Appellee refers us to no basis for the court's recital "that the first year premium income as admitted by defendant is in the total amount of $75,376.03." He merely states that "the Court's finding as to first year premium income received by appellant is supported by the testimony of Calhoun and the admissions of appellant." There being a conflict in the evidence on amount of first year premium income received by the company, the factual situation obviously becomes one for the jury to reconcile.

Lastly, the matter of quantum meruit, stressed in several points, was not pled by appellee nor were any issues raised bearing thereon. His suit was on an express contract for commissions allegedly due. But on account of the error as reflected in appellant's point ten, the judgment is reversed and cause remanded.