Isaac Delma **FLUITT**, Appellant,

v.

**VALLEY STOCKYARDS COMPANY,**
Appellee.

No. 14300.

Court of Civil Appeals of Texas.

San Antonio.

Nov. 18, 1964.

Rehearing Denied Dec. 16, 1964.

918

Oliver & Oliver, San Antonio, for appellant.

Foster, Lewis, Langley & Onion, San Antonio, Martin P. Ferrero, Greenwood & Russell, Harlingen, for appellee.

BARROW, Justice.

Valley Stockyards Company recovered a judgment for the value of sixty-five head of cattle converted by Isaac Delma Fluitt, d/b/a Union Livestock Commission Company, San Antonio, Texas. On November 7, 1960, Will Ed Wiley purchased the cattle from Valley Stockyards Company at its livestock yard in Mercedes, Texas, and gave his personal check as payment. The following day Wiley consigned the cattle to Fluitt in San Antonio, and Fluitt resold them a few days thereafter to persons not involved herein. Wiley's check was not paid by the bank on which it was drawn and Valley Stockyards asserted that therefore title to the cattle never passed to Wiley under the terms of the sale.

The primary question presented by this appeal is whether a fact issue was raised as to whether title in the cattle had passed to Wiley. If not, Fluitt converted the cattle when he resold them. The trial court, after a full trial on the merits, refused to submit an issue to the jury on this proposition al-

though several issues were requested by Fluitt.[1]

■ The applicable rule was recently restated by the Supreme Court in another case involving Wiley and Valley Stockyards. In Valley Stockyards Company v. Kinsel, 369 S.W.2d 19, Tex.1963, it was said:

"Respondent relies upon the general rule that where a cash sale is involved and personal property is delivered in exchange for a check, there is a presumption that the parties did not intend that title to the property should pass until the check was honored by the drawee bank. (Citing cases.) This presumption, however, is not conclusive but may be rebutted. If a jury could conclude from the evidence now in the affidavit and deposition form that the delivery of the cattle was made with the intention of passing title to Wiley at that time, it would necessarily follow that Valley Stockyards could not be held liable as a converter by purchasing the cattle from Wiley."

The factual background of this case is somewhat similar to that in Kinsel, supra, although Valley Stockyards here occupies the position of Kinsel in the first case. The evidence in this case relative to the actual sale is significantly different, in that, contrary to the verbal sale by Kinsel to Wiley, a written invoice or bill of sale was given by Valley Stockyards to Wiley, which contains the following recitation:

"Customers purchasing and paying for livestock through this company by check or draft, expressly agree that title does not pass to said purchaser, but is retained by owner until the fund is actually received on the check or draft. Such check or draft is accepted only to the rules and practices of any bank in which it may be deposited for collection, and is accepted for collection only as an accommodation to the maker and does not constitute a payment for animals until remittance received thereon. The property purchased on condition stated above."

■ It is seen that under this written agreement, Valley Stockyards retained title in the cattle until the check was paid. There is no allegation or proof of fraud, accident or mistake and therefore this unambiguous recitation is controlling. Aero-Gas Refining Co. v. Fisk Tire Co., Tex.Civ.App., 137 S.W.2d 191, writ ref.; Alamo Lumber Co. v. Fahrenthold, Tex.Civ.App., 58 S.W.2d 1085, writ ref.; 23 Tex.Jur.2d, Evidence, § 353. Further, there is no allegation to estop Valley Stockyards from relying on this provision of the memorandum of sale.

A similar situation was presented in John Clay & Co. Livestock Commission v. Clements, Fifth Circuit, 214 F.2d 803, where the invoice evidencing the sale contained substantially the same recitation. It was there said: "It would seem that, under Texas law, the sales were conditioned on payment of the drafts and did not pass title until the drafts were paid, unless there were waivers of that condition." See also, Berlowitz v. Standley, 117 Tex. 362, 5 S.W.2d 963, 1963. The distinction made by the recitation was also recognized in Valley Stockyards Co. v. Kinsel, supra.

■ Although the invoice contains the marked out notation "Chgd." in addition

1. Issues requested by Fluitt:
   "Do you find from a preponderance of the evidence that the Valley Stockyards Company charged the account of Will Ed Wiley for the value of the 65 head of cattle delivered by it to him? * * *
   "Do you find from a preponderance of the evidence that the Valley Stockyard Company sold 65 head of cattle to Will Ed Wiley on his credit and charged him for same and thereby passed title to said cattle to him? * * *
   "Do you find from a preponderance of the evidence that the Valley Stockyards Company accepted Will Ed Wiley's check on Security State Bank of Pharr, Texas, in payment for the 65 head of cattle, being the cattle alleged to have been converted by the defendant herein?"

to the remaining notation "Pd ck." the evidence is undisputed that Wiley paid Valley Stockyards for the cattle with his personal check drawn on the Security State Bank of Pharr, Texas. Wiley's check was not paid and therefore title did not pass to Wiley. The trial court did not err in refusing to submit Fluitt's requested issues on this proposition.

 Fluitt also complains of the trial court's refusal to submit an issue as to whether Valley Stockyards failed to present Wiley's check to the bank within a reasonable time. It is our opinion that this issue was properly refused. There was no evidence that Valley Stockyards did anything with Wiley's check other than to handle it in due course of its business. It was deposited for collection with Valley Stockyard's bank at Mercedes, along with other business checks, on November 9. Valley Stockyards had no information to cause it to treat this check in any other way than in due course. Further, there is no evidence that the check would have been paid if received any sooner. The bookkeeper for Fluitt testified that about noon on November 8, Wiley called her and requested her to wire him an advance on the sales price of the cattle. She wired $6,980.00 to Wiley's bank. Wiley absconded to British Honduras with all the money.

Fluitt asserts that the documents reflecting the transaction between Wiley and Valley Stockyards were hearsay as to him and were improperly admitted into evidence. We overrule this point. The invoices reflecting this sale by Valley Stockyards to Wiley constitute a necessary part of the cause of action and the hearsay rule is inapplicable. McCormick & Ray, Texas Law of Evidence, § 795. Furthermore, these records were shown to be a part of the business records regularly kept by Valley Stockyards and were therefore admissible. Art. 3737e, Vernon's Ann.Civ. Stats.

Mr. Phil Hoge, manager of Valley Stockyards, was qualified to testify as to the market value of the cattle in Mercedes. There was other evidence which showed that the San Antonio market was stronger than that at Mercedes. Furthermore, the admission of this testimony is harmless in that this same evidence was introduced without objection from an employee of Fluitt. Error is not shown in the examination of Hoge relative to the ownership of the cattle. This issue was raised by Fluitt and he cannot now complain of same.

The judgment of the trial court is affirmed.