IRVING LUMBER COMPANY, Appellant,

v.

ALLTEX MORTGAGE COMPANY, Inc.,
Appellee.

No. 17256.

Court of Civil Appeals of Texas.

Dallas.

May 9, 1969.

Rehearing Denied July 25, 1969.

Second Rehearing Denied Oct. 10, 1969.

**66** ◼ ▬▬▬▬▬▬▬

Eldon Youngblood, Patrick E. Higginbotham, Coke & Coke, Dallas, for appellant.

James E. Coleman, Jr., Gene L. McCoy, Carrington, Johnson & Stephens, Dallas, for appellee.

DIXON, Chief Justice.

This suit was filed by appellant Irving Lumber Company, a corporation, against two defendants: Alltex Mortgage Company, Inc., appellee here, and Merit Homes, Inc. Appellant will hereinafter be referred to as Lumber Company and appellee as Alltex.

Lumber Company seeks a declaratory judgment against Alltex establishing the priority of its mechanic's and materialman's liens over deed of trust liens of All-tex, on four pieces of property, including residential improvements thereon; and seeks also judgment pursuant to a stipulation between the parties.

Lumber Company sought judgment against Merit Homes, Inc. for debt and foreclosure of its mechanic's and materialman's liens. Merit Homes, Inc. did not file an answer. Judgment was rendered against it for the sum of $13,967.50 principal. Merit Homes did not appeal.

Previous to the trial Alltex had foreclosed its deed of trust liens against the four properties.

Lumber Company and Alltex have entered into a stipulation as follows:

"In order to induce Plaintiff not to join as parties herein the owners of the four (4) lots or parcels of land against which Plaintiff was asserting a lien herein, Defendant agrees and hereby states that, should the Court determine that Plaintiff is entitled to foreclose any liens against any of the four (4) lots of land, Defendant agrees that a money judgment in the total amount of such lien or liens which the Court deems would be entitled to foreclosure but for the failure to join necessary parties may be entered against Defendant, and execution thereon issue against the Defendant should it not be paid."

At the conclusion of Lumber Company's presentation of its evidence before a jury Alltex moved for an instructed verdict, which motion was sustained. Judgment was accordingly rendered that Lumber Company take nothing against Alltex.

FACTS

On July 8, 1964 Merit Homes, Inc., a real estate development company, executed a demand promissory note in the amount of $137,850 secured by deed of trust liens on a number of pieces of property includ-

ing the four properties involved in this suit. Part of the money loaned by Alltex was used by Merit Homes, Inc. to purchase and acquire title to three lots in the City of Garland, Texas; and part was used to pay off a prior existing vendor's lien against a lot in the City of Richardson, Texas.

*After* July 8, 1964, the date of Alltex's note and liens, Lumber Company furnished labor and materials which went into the construction of improvements on the four lots; but Lumber Company alleges that *before* July 8, 1964 it had entered into oral contracts with Merit Homes, Inc. to furnish said labor and materials, which were subsequently delivered on the sites pursuant to the prior oral contracts.

Lumber Company does not claim that its alleged oral contracts obligated it to furnish all work and materials necessary to complete the houses to be built. The permanent financing of the improvements was guaranteed by the Federal Housing Authority. The construction of each house was subject to inspections and approval by the Authority at three different stages: (1) when the foundation has been completed and the plumbing "roughed in"; (2) when the wall sections, the roof trusses, the cornice material and the exterior ceilings have been constructed; and (3) when the houses are completed. Lumber Company says that its oral contracts obligated it to construct the improvements only through the first two of the above stages. When the improvements reached this second stage they became what are known as "shell homes".

## OPINION

The substance of Lumber Company's first point of error is that the court erroneously concluded that under Texas law the inception of mechanic's and materialman's liens occurs only upon the delivery of materials to the construction site.

Lumber Company concedes that the liens of Alltex are superior to the extent that part of the money loaned by Alltex was used to purchase the three Garland lots and to pay off the prior existing vendor's lien against the Richardson lot. To that extent Alltex acquired vendor's liens. However Lumber Company contends that its mechanic's and materialman's liens are entitled to priority as a matter of law (except as to said vendor's liens) over the liens of Alltex because said mechanic's and materialman's liens had their *inception* when its oral contracts were entered into on April 27, 1964 and July 2, 1964 respectively, prior to the execution on July 8, 1964 of the deed of trust liens of Alltex. In support of this view Lumber Company relies chiefly, but not solely, on Art. 5459, Vernon's Ann.Civ.St., and the holding of our Supreme Court in Oriental Hotel Co. v. Griffiths, 88 Tex. 574, 33 S.W. 652, 30 L.R.A. 765 (1895).

Lumber Company frankly concedes that if its liens did not have their *inception* until labor and materials were actually delivered to the job sites under its oral contracts the liens of Alltex are entitled to priority, for the deliveries were made *after* July 8, 1964, the date of Alltex's note and deed of trust liens.

The opinion of our Supreme Court in Oriental Hotel Co. v. Griffiths, 88 Tex. 574, 33 S.W. 652 (1895) has been much discussed and analyzed in later cases, but there has not been a unanimity of opinion as to its meaning and application. In *Oriental Hotel* the facts were that the owner of the hotel property contracted with Griffiths to finish construction of a hotel building, the foundation of which had already been constructed. Griffiths engaged the services of various subcontractors. *Subsequent* to the execution of the above contract, but *before* the labor and material were furnished, a deed of trust lien was executed and filed in favor of St. Louis Trust Company. The Supreme Court held that the *inception* of all mechanic's and

materialman's liens, under Art. 5459, V.A. C.S., *related back* to the time of the formation of Griffiths' contract, thus were superior to the deed of trust lien. This holding has never been expressly overruled by the Supreme Court though its acceptance of the "relate back" doctrine has been narrowed and cautiously applied.

The opinion in Sullivan v. Texas Briquette & Coal Co., 94 Tex. 541, 63 S.W. 307 (1901) was written by Justice Brown, who was also the author of the court's opinion in *Oriental Hotel*. In *Sullivan* the Supreme Court held that under the particular facts of the case the deed of trust lien was superior to the mechanic's and materialman's liens. The fact that improvements were *contemplated* prior to the execution of the deed of trust will not give priority to the mechanic's and materialman's lien. The Court of Civil Appeals, relying on the holding in *Oriental Hotel,* had affirmed a judgment favoring the mechanic's and materialman's lien. In reversing the Court of Civil Appeals, the Supreme Court distinguished its holding in *Oriental Hotel*. Though the holding was not overruled, the Supreme Court had this to say in defending its earlier decision in *Oriental Hotel:*

> "While we believe that the decision in that case is amply sustained by the law, and correctly made, *we are of the opinion that the facts of the case demanded and the opinion went as far as the law justifies to sustain* such liens, \* \* \*." (Emphasis ours.)

In Vaughan Lumber Company v. Martin, 98 Tex. 80, 81 S.W. 1 (1904) (a later episode in the Sullivan case) the losers in the Sullivan case attempted to show an oral contract which antedated the deed of trust lien. The recital of the facts indicates that if there was such a contract it was an agreement simply to furnish materials for general needs, not a general contract to construct improvements on a designated site. However the court seems to have assumed the existence of the contract in its holding and again decided that the deed of trust lien was superior.

The facts in McConnell v. Mortgage Investment Co., 157 Tex. 572, 305 S.W.2d 280 (1957), were that contractors furnished labor and materials for which they were paid; a deed of trust was later filed; subsequent to the filing of the deed of trust additional labor and materials were furnished but were not paid for. The court held in its majority opinion that the mechanic's and laborer's liens did not relate back to the time when the labor and materials were first furnished—that is, the labor and material for which the contractor had been paid.

But the significance of the majority opinion in *McConnell* in regard to the instant case lies in the court's statement explaining its decision. The court said, 305 S.W.2d on pages 283 and 285 of its opinion:

> "As we understand the rule of the Oriental Hotel Co. case it is a comparatively narrow one and its holding is strictly confined to a set of facts similar to that disclosed in the opinion. The controlling feature or circumstance of the case is the existence of a general contract between an owner on the one hand and a building contractor on the other."

> "An extension of the doctrine of the Oriental Hotel Co. case would be required to support the holdings of the courts below. It would be necessary to say that the 'beginning of the work' is the same as 'the projection of the building and the execution of a contract for its construction.' In 1901 this Court refused to make a similarly proposed extension—but in effect held that the doctrine announced in the Oriental Hotel Co. case 'went as far as the law justifies,' and hence should not be expanded to apply to factual situations not strictly analogous to those disclosed in the reported opinion."

■ We have concluded that under the facts of this case, even if Lumber Company and Merit Homes, Inc. did enter into the oral contracts as alleged, the deed of trust liens of Alltex are superior to the mechanic's and materialman's liens of Lumber Company. We have reached the above conclusion for these reasons:

1. There was no general contract entered into between the parties in the sense that Lumber Company agreed to complete the construction of the improvements. It agreed only to erect houses through the second stage of F.H.A. requirements— "shell houses".

2. No labor or materials had been furnished and no improvements had been started when Alltex's deed of trust lien had its inception. In *Oriental Hotel* the foundations of the building had already been constructed hence must have been plainly visible to anyone who inspected the premises. In this connection the Supreme Court said, "When a building or other improvement is in course of construction, and any person takes a mortgage on the land upon which such building or improvement is situated, or on the improvement itself, he does so with the knowledge that it may be necessary for the completion of the building that other contracts should be made for labor and material, * * *."

In the instant case at the time of the inception of Alltex's deed of trust liens the property consisted of four vacant lots. No improvements had been made, no labor and materials had been furnished. There was no contract which had been filed for record giving notice of Lumber Company's alleged oral agreements. Its affidavits for liens were filed much later. If we were to hold in accordance with Lumber Company's contention our holding would have the effect of placing a deed of trust lien holder in a situation where he would be helpless to defend himself from secret liens of which he had no knowledge or notice.

3. At the time of the inception of Alltex's lien Merit Homes, Inc. did not even own three of the four vacant lots involved and the other lot was encumbered with a vendor's lien. Alltex money was used by Merit Homes, Inc. to purchase and acquire title to three of the lots and to pay the prior existing vendor's lien on the fourth lot. We are aware that in some situations it has been held that a materialman's contract with one not the owner of property may relate back to the inception of the contract. But we believe that under the facts presented here such holdings are not applicable.

■ 4. Lumber Company concedes that Alltex's vendor's liens are superior as to the land to Lumber Company's liens. However mechanic's and materialman's liens have priority under Art. 5459, V.A.C.S., as to improvements and the improvements may be sold separately *if the improvements can be severed without damaging the realty*. If the improvements are merged into other improvements which cannot be severed without damaging the realty the mechanic's and materialman's liens do not have priority. Parkdale State Bank v. McCord, 428 S.W.2d 121 (Tex. Civ.App., Corpus Christi 1968, writ ref'd n.r.e.) and cases there cited. Also see Vol. XXI Baylor Law Rev., p. 28 and cases there cited; and 40 Tex.Law Rev., pp. 876–877 and cases there cited.

In the instant case the improvements for which Lumber Company furnished labor and materials consisted only of "shell houses". Plainly these "shell houses" became merged with the completed houses and could not be removed and sold separately without damaging the realty.

In view of the circumstances disclosed by the record in this case we cannot bring ourselves to believe that the holding in *Oriental Hotel* should be extended as contended for by Lumber Company.

Lumber Company cites us to the holding of our Supreme Court in University Savings & Loan Ass'n v. Security Lumber Co., *423 S.W.2d 287* (Tex.Sup.1967). The

holding in *University Savings* is not in point here. The court said there was no evidence either of a general contract or a special contract between the parties before the first delivery of materials. Therefore the inception of the mechanic's and materialman's lien was upon the first delivery of materials to the lots in question. The Supreme Court expressly declined to consider the question now before us. We quote from the opinion:

"The record before us does not support a conclusion that a special contract of purchase and sale of all materials was entered into by Wieghard and Security before the first delivery of materials. * * * We need not decide, therefore, whether in the absence of a general construction contract between an owner of land on the one hand and a building contractor on the other, the lien of one who supplies material pursuant to a special contract with an owner-builder will relate back to the date of the contract."

Lumber Company also cites the opinion of this court in Wood v. Barnes, 420 S.W. 2d 425 (Tex.Civ.App., Dallas 1967, writ ref'd n.r.e.), in which the opinion was written by the author of this opinion. It is true we said in *Wood* that the liens being properly fixed related back to the inception of the contract, citing the Oriental Hotel case. Nevertheless our holding in *Wood* is not in point here. The issue presently before us was not present in *Wood*. There the purchasers of newly completed houses required the owner and developer to sign affidavits that all bills had been paid. The affidavits were false. It was obvious the labor and materials had already been furnished *before* the purchasers bought the houses. There was still time within which the furnisher of labor and materials could file his affidavit liens under Articles 5453 and 5455, V.A.C.S. He fully complied with the statutory requirements. We held that the purchasers of the houses had constructive notice that there was still time for suppliers of labor and materials to establish their liens by filing their affidavits. Lumber Company's first point is overruled.

In its points of error Nos. 2 to 7 inclusive Lumber Company says that the testimony of Robert E. Nugent, its General Sales Manager, as to conversations with Pres Sanders, President of Merit Homes, Inc., is competent evidence of the oral contracts between Lumber Company and Merit Homes, Inc., which contracts are relied on by Lumber Company; that said testimony is not hearsay; therefore the court erred in excluding the testimony on the ground that it was hearsay as to Alltex.

In its eighth point Lumber Company asserts that the court erred in directing a verdict for Alltex since Lumber Company's evidence raised fact issues necessary to support its cause of action, therefore said issues should have been submitted to the jury.

It is obvious that under Lumber Company's theory of the law applicable to this case it was incumbent on Lumber Company to prove that it did have oral contracts with Merit Homes, Inc. to furnish labor and materials for the construction of improvements on the four lots and that these contracts were entered into prior to July 8, 1964, the date when Merit Homes executed the deed of trust liens of Alltex.

Nugent testified that in March 1964 Sanders asked him "if I would continue with him on the same basis, under the name of Merit Homes, as I had been with him under the name of S & S Construction Company, and I said I would."

The basis on which Lumber Company had contracted in 1963 with S & S Construction Company was explained by Nugent. S & S had several different plans and specifications for the construction of residential houses. Each plan had a number. Lumber Company had copies of these plans and specifications. By written agreement dated February 6, 1963 (Exhibit No. 9) Lumber Company agreed to con-

struct "shell houses" for S & S Construction Company at fixed prices (Exhibit No. 8) "on order" of S & S. Pursuant to this agreement Lumber Company had built twenty "shell houses" for S & S.

Nugent's testimony together with Exhibits Nos. 8, 9 and 12 showed the oral contracts between Lumber Company and Merit Homes, Inc. The testimony and the exhibits may be analyzed as follows:

| SITE | PLAN NO. | DATE ORDERED | CONTRACT PRICE | DATES LABOR AND MATERIAL DELIVERED |
|---|---|---|---|---|
| Lot 22–Bl. 3, 1602 Yale St., Garland | 205–A | April 27, 1964 | $3,752.12 | July 14, 1964 and July 15, 1964 |
| Lot 27, Bl. 4, 4005 Justice St., Garland | 210–B | April 27, 1964 | $3,752.12 | July 27, 1964 and July 29, 1964 |
| Lot 43, Bl. 4, 4209 Justice St., Garland | 205–B | July 2, 1964 | $3,752.12 | July 10, 1964 and July 21, 1964 |
| Lot 25, Bl. 147, 720 Maryland St., Richardson | 304–B | July 2, 1964 | $2,487.52 | August 10, 1964 and August 11, 1964 |

It will be noted from the above that on April 27, 1964 and July 2, 1964 Merit Homes ordered the construction of the "shell homes" by Lumber Company pursuant to Lumber Company's previous offer. These are the dates when the oral contracts were entered into according to Lumber Company and mark the inception of its mechanic's and materialman's liens.

■ We have concluded that Nugent's testimony is not hearsay as to Alltex. Evidence of an out of court statement is not hearsay unless it is offered as proof of the fact asserted. Many utterances do not come within that category. The fact that the words were uttered is sometimes the fact to be established. Such testimony is received because the mere utterance of the words has legal significance. Sanders v. Worthington, 382 S.W.2d 910, 915–916 (Tex.Sup.1964); Okan Pipeline Co. v. Eiland, 394 S.W.2d 548, 551 (Tex.Civ.App., Eastland 1965, writ ref'd n.r.e.). It has been held that out of court utterances are admissible when they are the basis of a cause of action. Fluitt v. Valley Stockyards Co., 384 S.W.2d 917, 920 (Tex.Civ.

App., San Antonio 1964, writ ref'd n.r.e.); Presidential Life Ins. Co. v. Calhoun, 325 S.W.2d 732, 735 (Tex.Civ.App., Dallas 1959, writ ref'd n.r.e.). It has also been held that out of court statements are not hearsay when tendered to show offer, or acceptance in suits on a contract. See Vol. 1, McCormick and Ray, "Texas Law of Evidence", Section 795, and cases there cited; also see 31A C.J.S. Evidence §§ 260–261, p. 680–682.

■ Exhibits Nos. 8, 9 and 12 were taken from the files of Lumber Company. They are business records which were kept by Nugent himself. They were properly admitted into evidence as business records. Art. 3737e, V.A.C.S.; University Savings & Loan Ass'n v. Security Lumber Co., 423 S.W.2d 287, 290 (Tex.Sup.1967); Fluitt v. Valley Stockyards Co., 384 S.W.2d 917, 920 (Tex.Civ.App., San Antonio 1964, writ ref'd n.r.e.). We are of the opinion that Nugent's testimony and the exhibits he offered are not hearsay as to Alltex. However we think that the error of the court in excluding them as to Alltex on that ground was harmless. We so conclude be-

72

cause of our holding with reference to Lumber Company's first point of error. We overruled said first point because we held that even if Lumber Company had entered into oral contracts with Merit Homes, Inc. on April 27, 1964 and July 2, 1964 as it alleged, its mechanic's and materialman's liens did not have their inceptions on those dates under the circumstances shown by the record.

Lumber Company's points Nos. 2 to 7 inclusive and its point No. 8 are overruled.

In its points Nos. 9 and 10 Lumber Company complains of the action of the court in granting an instructed verdict. We believe the reasons heretofore given for overruling Lumber Company's first eight points are also applicable here. Lumber Company's points Nos. 9 and 10 are overruled.

In its third point in its Reply Brief Lumber Company points out that its lien is a constitutional lien. Art. 16, Sec. 37, Constitution of Texas. It is true that a mechanic's and materialman's constitutional lien is self-executing as between the contractor and the owner and is enforceable against the owner without being filed for record. But even a constitutional lien will not be enforced against an innocent purchaser or mortgagee who has neither actual nor constructive notice of the constitutional lien. Continental Radio Co. v. Continental Bank & Trust Co., 369 S.W.2d 359, 362 (Tex.Civ.App., Houston 1963, writ ref'd n.r.e.); Black, Sivalls & Bryson v. Operators' Oil & Gas Co., 37 S.W.2d 313, 315 (Tex.Civ.App., Eastland 1931, writ dism'd). There is nothing in this record to show that on July 8, 1964 Alltex had either actual or constructive knowledge that Lumber Company had already entered into oral contracts with Merit Homes, Inc. to build shell homes on the four lots in question—lots which Merit Homes, Inc. did not even own at the time said contracts were made.

The judgment of the trial court is affirmed.

## ON MOTION FOR REHEARING

In its Amended Motion for Rehearing appellant says that we were mistaken when we said in our original opinion "* * * at the time of the inception of Alltex's deed of trust liens the property consisted of four vacant lots." On rehearing appellant for the first time takes the position that on July 8, 1964 when Alltex advanced money to Merit Homes, Inc., the foundations had already been laid for the four houses, the plumbing had already been roughed in and the improvements had already passed the first FHA inspection. Therefore, according to appellant, Alltex had constructive notice that there might already be materialmen's liens against the property.

Appellee in reply to the Amended Motion vigorously denies that there is any evidence to indicate that the lots were any other than vacant lots.

In view of the above newly presented contention of appellant we have again reviewed the record in its entirety. We adhere to the challenged statement.

As we view the record the case was tried, the appeal taken and the briefs of the parties were submitted on the theory that no improvements had been started on the four lots prior to July 8, 1964. We quote from appellant's own brief:

"Under the terms of each of such contracts, *Irving Lumber Company became obligated to construct—through Stage II of FHA inspection—a residential house, furnishing all labor and materials therefor on the city lot designated by Merit Homes, Inc.* at the time each contract was made. Each such contract may be identified by the street address of the applicable lot and by the date of its making as follows: * * *

"Although labor and materials were not furnished under those contracts until after July 8, 1964 * * *.

"It is conceded that if Irving Lumber Company's liens did not have their incep-

tion until labor and materials were actually delivered to the job sites *under all contracts*, Alltex's liens are entitled to priority." *

"*Irving Lumber Company's obligation under each of the contracts was to complete a house through Stage II of FHA Inspection*, that is, to construct a 'shell home' by building the frame of a house with roof trusses in place and covering the roof framing with plywood."

"(1) That on or about March 1, 1963, Irving Lumber Company and S & S Construction Company, through its agent, Pres Sanders, entered into a written contract under the terms of which Irving Lumber Company, as contractor, became obligated to erect a 'shell home' *on lots owned by S & S Construction Company, furnishing all labor and materials necessary to complete the home through Stage II of FHA inspection. * * * Plt'fs Ex.–9.*"

"* * * Merit Homes, Inc., by its President, Pres Sanders, accepted the offer of Irving Lumber Company *by ordering the construction of 'shell homes' and the furnishing of materials therefor on the four lots as to which Irving Lumber Company asserts mechanic's and materialman's liens.*"

We quote from appellee's brief:

"There is no evidence that any construction work had commenced, or that any deliveries had been made by Appellant *or any other party* to any of the four lots in question on July 8, 1964, the date Alltex acquired its deed of trust."

" * * * Appellant's theory that it had a contract which forms the basis of the 'inception' of its lien is untenable * * * *when (a) no work has been commenced on the real property * * *.*"

" * * * In this case, the owner of the real estate gave a mortgage to the interim lender *prior to the time any improvements or work had been commenced on the real estate.*"

" * * * At the time that the deed of trust was given by Merit Homes to Alltex *no work had commenced on the four lots in question* and Appellant's claim was not of record. Therefore, there was nothing which would have fairly put Alltex on inquiry whereby Alltex might have discovered the existence of the secretly claimed lien of Irving Lumber Company."

Appellant filed a reply brief in answer to appellee's brief but did not challenge the above factual statements of appellee.

The evidence also supports our statement. Plaintiff's Exhibit No. 9, referred to in appellant's brief and relied on by appellant as part of its contract, contains this provision:

"March 1, 1963

In accordance with Irving Lumber Company's quotation dated February 26, 1963, and accepted by S & S Construction Co., Inc., Irving Lumber Company will construct houses to plans and specifications as drawn by Russ Selmer & Associates, entitled 'Quality Homes' as ordered by S & S Construction Co., Inc.

It was stipulated that the purchase price of the four lots was $2,650 each, and the finished houses were to be priced between $15,000 and $20,000.

It was also stipulated that the Richardson lot was conveyed to Merit Homes on March 2, 1964, subject to a vendor's lien, and that the three Garland lots were conveyed to Merit Homes on July 8, 1964; and that out of the money loaned by Alltex on July 8, 1964 part was used by Merit Homes to pay the vendor's lien against the Richardson lot and part was used to pay the purchase price of the Garland lots.

---

\* In all instances in this opinion the emphases are ours.

Other portions of the evidence might be cited or quoted in support of our statement, but we shall not further extend this opinion by additional citations or quotations. Suffice it to say we find nothing in the record to cause us to change our statement that the lots in° question were vacant lots on July 8, 1964.

■ However we need not rest our decision in this case on the question whether construction of improvements had already begun on the lots when Alltex obtained its liens on July 8, 1964. Alltex has already foreclosed its liens, including the vendor's liens which appellant concedes are superior to its materialmen's liens. Such foreclosure of the senior vendor's liens extinguished appellant's junior materialmen's liens. It is true that Art. 5459, Vernon's Ann.Civ.St., provides that liens for material and labor furnished shall attach to the house, building or improvements in preference to any prior lien or mortgage on the land; and that to enforce such materialmen's and laborer's liens the improvements may be sold separately. Appellant claims that after Alltex's prior vendor's liens are satisfied the balance of the money realized at the foreclosure sale should be applied toward payment of Lumber Company's materialmen's and laborer's liens.

We do not agree with appellant for these reasons:

■ 1. Our Supreme Court has held that notwithstanding the statute the improvements are not to be sold separately to satisfy an inferior materialmen's lien when the improvements are not severable and to sever them would result in serious injury to the real property. In such case the senior vendor's liens are entitled to priority over materialmen's liens both as to house and lot. Cameron County Lumber Co. v. Al & Lloyd Parker, Inc., 122 Tex. 487, 62 S.W.2d 63 (1933); Hammann v. H. J. McMullen & Co., 122 Tex. 476, 62 S.W.2d 59 (1933). When the improvements on which the materialmen's lien is claimed are not severable without harm to the rest of the property, the claimant of the materialmen's lien is not entitled to have the value of the improvements determined, the property sold and the proceeds prorated. C. D. Shamburger Lumber Co. v. Holbert, 34 S. W.2d 614 (Tex.Civ.App., Amarillo 1931, no writ). See also Baker v. Marable, 396 S. W.2d 222 (Tex.Civ.App., El Paso 1965, writ ref'd n.r.e.); Parkdale State Bank v. McCord, 428 S.W.2d 121 (Tex.Civ.App., Corpus Christi 1968, writ ref'd n.r.e.); Vol. XXI Baylor Law Rev., p. 28; 40 Tex.Law Rev., pp. 876–877.

In the case now before us it is obvious that the improvements for which appellant claims a materialmen's lien cannot be separated and removed from the property without serious harm to the rest of the realty. This is especially true if we were to accept appellant's present contention (we do not accept appellant's said contention) that it furnished materials and labor only after the foundation was constructed and the plumbing roughed in. The 'shell house' constructed by appellant could not be separated from the rest of the improvements without causing a collapse of the house.

■ 2. Another reason: There is no showing that appellant ever attempted to foreclose its materialmen's liens, or to cause the improvements on which it claims liens to be sold separately; or that it ever sought to protect its inferior and junior liens by offering to pay off Alltex's senior vendor's liens prior to foreclosure by the senior lien holder. So far as the record shows appellant stood idly by and allowed Alltex to foreclose its superior vendor's liens, thus extinguishing all inferior liens. Providence Institution for Savings v. W. J. Sims, 441 S.W.2d 516 (Tex.Sup.1969); Richmond v. Nowlin, 135 S.W.2d 521 (Tex.Civ.App., Amarillo 1940, writ dism'd, jdgmt correct); 39 Tex.Jur.2d 231.

Appellant's amended motion for rehearing is overruled.