## HOUSTON CHRONICLE PUB. CO. v. MARTIN. (No. 2131.)

Court of Civil Appeals of Texas. El Paso. March 22, 1928.

Rehearing Denied April 19, 1928.

**1. Libel and slander** &#x27F

&#x3B;130—Words spoken of property are not in themselves actionable, but may be where owner is injured by wrongful disparagement thereof.

Words spoken of property are not in themselves actionable, though one may be as seriously injured by wrongful disparagement of his property as by slander of himself.

**2. Libel and slander** &#x27C;130—To constitute "slander of property" words must have been false, maliciously published, and resulted in special damage.

To maintain action for slander of property, it must be shown that words were false, maliciously published, and special damage proximately and reasonably resulted to owner of property; gist of action being special damage sustained.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Slander.]

**3. Libel and slander** &#x27C;33, 100(2)—"General damages" for libel and slander are presumed to be natural consequences of defamatory words not requiring proof, while "special damages" are not inferred but must be pleaded and proved.

In action for libel and slander of person, general damages are those which law presumes to be natural or probable consequences of defamatory words and need not be proved by evidence, while special damages are not inferred from nature of words, but must be specially pleaded and proved.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, General Damages; Special Damages.]

---

**4. Libel and slander ⬩135—Recovery of damages for slander of title requires proof that pending sale to named prospective purchaser was defeated.**

In action for slander of title, generally it is necessary to plead and prove that some pending sale was defeated by slander and to give name of prospective purchaser in order to recover damages, general diminution in market value not being sufficient.

**5. Libel and slander ⬩139—Damages recoverable for diminution in market value of goods slandered are not limited to failure to consummate pending sale.**

In action to recover damages for slander of property as distinguished from slander of title, damages recoverable for defamatory statements naturally and proximately diminishing market value of goods are not limited to damages resulting from failure to consummate pending sale defeated by defamatory statements, in view of general rule that for every wrongful act, wrongdoer is liable in damages to injured party.

**6. Libel and slander ⬩139—Diminution in market value of bulls resulting from false statement that they were diseased is not too remote or speculative to be recovered.**

In action to recover damages for false statement charging plaintiff's bulls with being diseased, diminution in market value of bulls held for sale is not so remote, speculative, and conjectural as to preclude recovery for loss thus sustained.

**7. Libel and slander ⬩139—Petition alleging that market value of bulls diminished in specified amount because of false publication that bulls were diseased held sufficient plea of special damage.**

Petition to recover damages for false statement that plaintiff's bulls were diseased, alleging that by reason of publication of statement market value of bulls was diminished in certain amount, was sufficient pleading of special damage proximately caused by libelous publication.

**8. Trial ⬩352(1)—Issue whether defendant sued for slander of property knew or ought to· have known of resulting damages held not error, as giving undue prominen~e to evidentiary issue and as charge on w~ight of evidence.**

In action to recover damages for publication of false statement that plaintiff's bulls were diseased, submission to jury. of question whether defendant knew or had knowledge of facts sufficient to put ordinarily prudent person on inquiry respecting damage, if any, that plaintiff might sustain by reason of publication, *held* not error, as giving undue prominence to evidentiary issue and as charge on weight of evidence.

**9. Trial ⬩350(3)—Issue whether newspaper publication containing alleged defamatory statement was qualifiedly privileged should have been submitted.**

In action to recover damages for publication in newspaper of false statement that plaintiff's bulls were diseased, issue whether newspaper publication was qualifiedly privileged should have been submitted.

**10. Libel and slander ⬩136—Publication of defamatory matter qualifiedly privileged is actionable if prompted by actual malice.**

Publication of defamatory matter qualifiedly privileged is nevertheless actionable if publication is prompted by actual malice, destroying privilege.

**11. Libel and slander ⬩136—Question of qualified privilege is immaterial where jury found defamatory article was published with actual malice.**

Where jury found that defendant published alleged defamatory article with actual malice toward plaintiff, question of qualified privilege ·was immaterial.

**12. Libel and slander ⬩139—Evidence that defamatory newspaper articles ,was sent to·defendant by news gathering association held admissible in action for slander of property.**

In action to recover damages for publication of false statement that plaintiff's bulls were diseased, evidence that one of articles alleged defamatory was sent to defendant newspaper by news gathering association and that defendant had no connection with transmission of same should have been admitted for consideration of jury in determining amount for which defendant was liable, since defendant was liable only for damage directly and naturally resulting from own defamatory statements only.

**13. Libel and slander ⬩138—Originator of slander of property is liable only for damage· resulting from own act and not from statements of another.**

In action for slander of property, originator of slander is liable only for such damage as directly and naturally results from own act, and is not responsible for publication of defamatory statements by another without his direction and authority.

**14. Appeal and error ⬩1050(1)—Evidence ⬩472(2)—Plaintiff's testimony that he knew of no reason why market value of property was diminished other than defamatory publication held opinion invading jury's province, and admission was reversible error.**

In action to recover damages for publication of false statement that plaintiff's bulls were diseased, testimony by plaintiff that he knew of no reason why market value of bulls was destroyed other than defamatory publication was an opinion or conclusion of witness that market value of bulls was diminished by publication, which was fact to be determined by jury, and its admission was reversible error, in view of evidence of other matters which may have affected market value.

**15. Appeal and error ⬩1050(1)—Opinion evidence as to cause ,of diminution of market value of property slandered would not be reversible error, where facts on which conclusion was based were before jury.**

Testimony by plaintiff in action for slander of property that he knew of 'no reason why market value of property was destroyed other

than defamatory publication, though opinion evidence, would not be reversible, where facts on which witness based conclusion are before jury and jury could not have been misled by testimony.

Appeal from District Court, Bexar County; Rob't W. B. Terrell, Judge.

Suit by John T. Martin against the Houston Chronicle Publishing Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Birkhead, Lang & Beckmann, of San Antonio, and Huggins, Kayser & Liddell and Wolters, Blanchard, Woodul & Wolters, all of Houston, for appellant.

Fly & Ragsdale, of Victoria, and Edwin Sehorn and John Sehorn, both of San Antonio, for appellee.

HIGGINS, J. This is a suit by appellee, Martin, against the Houston Chronicle Publishing Company for damages alleged to have been sustained by the publication and circulation of two articles in the Houston Chronicle, a newspaper published by defendant. The articles complained of appeared in the regular mail edition of the paper on September 27, 1924; also in the final edition of that date. The articles are lengthy. They set out the discovery of the foot and mouth disease in Harris county; the establishment of a quarantine; that the only infection so far noticed was in the herd of about 400 Brahma cattle owned by Dr. Jacobs, of which about one-half were said to be infected. The articles deal at length with the seriousness of the disease, its contagious nature and danger to the cattle industry; the steps being taken by state and federal authorities to deal with and stamp it out. In the first edition of the paper appears this statement:

"The source of the present infection in this country has not been established definitely, but it is believed to have originated in the shipment to the Nellore ranch of seven Brahma bulls from Mexico. The bulls belonged to a herd imported from Brazil about a year ago by John Martin of Artesia Wells, near San Antonio."

Such statement also appeared in the final edition; also this further statement:

"One of the Brahma bulls which was imported from Mexico, and which, is believed, was in the same herd that brought the infection into Harris county, has been located on the McFaddin ranch in Victoria county, it was learned Saturday."

It was alleged by plaintiff:

"That it is plain that the intendment of said quoted article is to the effect that the cattle plague discovered in Harris county had been brought into Texas by cattle imported from Mexico or Brazil, and that one of the cattle thus imported had been definitely located on the McFaddin ranch in Victoria county, Tex., and such importation was made by plaintiff. That

said articles above quoted were published in each and every copy of said issue of said newspaper circulated, distributed and sold by the defendant in the state of Texas, or Texas elsewhere. That said article was false and libelous in this plaintiff's business as will be hereinafter shown. That prior to the publication, defendant made no effort to ascertain the truths of the matters therein stated and wrongfully, willfully, and maliciously published the same. That this plaintiff, at the time said publication herein complained of, was engaged in the importation of cattle, commonly known in Texas as Brahma cattle, and the same are being imported by him through Mexico into Texas. This plaintiff, at the time of said publication, had created a demand among stock breeders for Brahma cattle on their ranches in Texas, and at that time there was a great demand in Texas for Brahma cattle, which said demand had been largely built up through the plaintiff's efforts and labors.

"That said plaintiff, at the time of said publication, owned and had for sale at San Antonio, Tex., 56 head of Brahma bulls which had been imported by him from Brazil into the United States through Mexico, and which said cattle were a part of the same herd of cattle referred to in the article above quoted on page 2 of this petition, and which reads as follows: 'The source of the present infection in this country has not been established definitely, but is believed to have originated in the shipment to the Nellore ranch of seven Brahma bulls from Mexico. The bulls belonged to a herd exported from Brazil about a year ago by John Martin, of Artesia Wells, near San Antonio.' And that the bull referred to in said publication on page 13 hereof, which reads as follows: 'One of the Brahma bulls which was imported from Mexico, and which is believed was in the same herd that brought the infection into Harris county, has been located on the McFaddin ranch in Victoria county, it was learned Saturday'—was likewise out of the same herd of cattle which was imported by him into the United States from Brazil through Mexico. That of said 56 head of Brahma bulls he had contracted to deliver 13 of said herd at a price satisfactory to him and the contracting purchaser. That at the time of said publication the remaining 43 bulls, the sale of which had been uncontracted by this plaintiff, had a fair and reasonable special sale value, as breeding animals, of an average of not less than $1,500 each. That by reason of said publication, cattle breeders in southwest Texas, where these cattle had a special breeding value, became alarmed at conditions which said article charged in said herd of Brahma bulls, to wit, they became alarmed at the possibilities of contracting the foot and mouth disease through the use of these bulls as breeding animals on their ranges, and refused, for that reason, to buy any of the 43 remaining bulls from this plaintiff for a long period of time, during all of which time this plaintiff was compelled to feed and take care of said bulls, at a cost to him of $6,514.60, which plaintiff avers was necessary and was the reasonable value of such feeding.

"Plaintiff avers that by reason of said publication the market value of said 43 bulls for special breeding purposes was diminished to the extent of $892 per head, whereby plaintiff avers that he has been damaged in the sum of $38,356, being the difference in special sale value of said 43

bulls for breeding purposes before said publication and the market value of said bulls after said publication.

"Plaintiff further avers that said charges that said infection was brought into this country through the bulls imported by him from Brazil through Mexico into this country is false and untrue, and the same was published by the defendant without any regard as to the origin of said disease and without having made proper inquiry to ascertain the true origin of such infection nor the truthfulness of the charges made in said publication."

The case was submitted upon issues, as follows:

"Question No. 1. Were the articles published by the defendant Houston Chronicle Publishing Company under date of September 27, 1924, false in so far as they charged that the bulls imported by the plaintiff Martin were the cause of the outbreak of the foot and mouth disease in Harris county, Tex?

"Question No. 2. Were the articles published by the defendant Houston Chronicle Publishing Company under date of September 27, 1924, published and circulated by the defendant Houston Chronicle Publishing Company with actual malice toward the plaintiff John T. Martin?

"Question No. 3. Was the publication of the articles in question by the defendant Houston Chronicle Publishing Company the proximate cause of the damages, if any, sustained by the plaintiff, John T. Martin, as alleged in his petition?

"Question No. 4. Did the defendant Houston Chronicle Publishing Company at or prior to the time of the publication of the articles in question on September 27, 1924, know, or have knowledge of any fact or facts which were reasonably sufficient to put an ordinarily prudent person upon inquiry, with respect to the damages, if any, the plaintiff, Martin, might sustain by reason of said publication?

"Question No. 5. What amount of damages, if any, do you find from the evidence that the plaintiff John T. Martin sustained as the proximate cause of the publication of the articles in question?"

The first four questions were answered yes. In response to the fifth the damage was assessed at $20,000, for which amount judgment was rendered.

This is a novel case. Counsel have not cited, nor have we found in the search made by us, any case which we regard as directly in point upon the question of liability vel non upon the facts pleaded and proven.

[1] Words spoken of property are not in themselves actionable (37 C. J. 130), but one may be as seriously injured by the wrongful disparagement of his property as by a slander of himself. Note in Webb's Pollock on Torts, 304.

"An untrue statement disparaging a man's goods, published without lawful occasion and causing him special damage, is actionable. This is laid down as a general principle by Baron Bramwell; and it applies though no imputation is cast on the plaintiff's private or professional character. Nor, in the opinion of the same learned judge, is it necessary to prove actual malice; it is sufficient if it be made without reasonable cause." Newell, Slander and Libel (3d Ed.) § 230.

At section 223, Mr. Newell quotes from Ratcliffe v. Evans, 2 Q. B. 527, as follows:

"That an action will lie for written or oral falsehoods not actionable per se, nor even defamatory, where they are maliciously published, where they are calculated in the ordinary course of things to produce, and where they do produce, actual damage, is established law. Such an action is not one of libel or of slander, but an action on the case for damage, willfully and intentionally done without just occasion or excuse, analogous to an action for slander of title."

[2] To maintain an action for slander of property it must be shown that the words were false, maliciously published, and special damage, proximately, naturally, and reasonably resulting to the owner of the property. The gist of the action is the special damage sustained. Newell, §§ 223, 224; 37 C. J. 130.

As to these general rules, the appellant makes no point, but asserts the court erred in overruling its general demurrer and motion for peremptory charge in its favor because no recoverable damage was pleaded or proven. Its first eleven propositions relate to this question. In varying form they are to the effect that a general depreciation in the market value of the plaintiff's bulls is not special damages as that term is used in the law of slander of property; that in order to show recoverable special damage it was incumbent upon plaintiff to plead and prove the loss of pending sales and give the names of the customers who intended to purchase from him and were deterred from so doing by the false statements and imputations concerning his bulls; that a general diminution in the market value of the bulls caused by the false statement is a damage too remote, speculative, and conjectural to be recovered.

General damages are those which naturally and necessarily result from the wrong complained of while special damages are those which naturally but not necessarily result from a wrongful act. In the one case the law presumes and implies damages to have resulted from the wrongful act, whereas in the other case such presumption and inference does not arise because damages do not necessarily result from the alleged wrongful act.

[3] In the law of slander and libel of the person, general and special damages are thus regarded. In actions of that nature "general damages are those which the law will presume to be the natural or probable consequences of the defamatory words; they arise by inference of law and need not be proved by evidence," while "special damages are such as the law will not infer from the nature of the words themselves; they must therefore be especially claimed in the plead-

ings, and evidence of them must be given at the trial. Such damages depend upon the special circumstances of the case, upon the defendant's position, and upon the conduct of third persons. In some cases special damage is a necessary element in the cause of action." Newell, §§ 983, 999.

[4] In cases of slander of title it is generally held necessary to plead and prove that some pending sale was defeated by the slander and to give the name of the prospective purchaser. Newell, "Slander and Libel," § 229; 37 C. J. 134; 17 R. C. L. title "Libel and Slander," § 216; Burkett v. Griffith, 90 Cal. 532, 27 P. 527, 13 L. R. A. 707, 25 Am. St. Rep. 151; Hubbard v. Scott, 85 Or. 1, 166 P. 33; Barquin v. Hall Oil Co., 28 Wyo. 164, 201 P. 352, 202 P. 1107.

In cases of that nature there is a reason for the rule because the intrinsic or market value of the property itself is not ordinarily affected; if at all affected, but remotely so, speculative and conjectural in its nature. An action to recover damages for actionable false statements concerning the quality, purity or value of goods or property has been said to be in the nature of an action for slander of title. The liability of the defendant in such cases is similar to that in actions of the latter nature. 17 R. C. L. title "Libel and Slander," § 217.

[5] But to us it seems inadmissible to arbitrarily assume and say that in all cases of slander of property as distinguished from slander of title, the only damage recoverable for actionable defamatory statements which naturally and proximately diminish the market value of goods are those damages which result from a failure to consummate pending sales defeated by the defamatory statements. To so hold would be contrary to the just and general rule of law that for every act wrongful against another the wrongdoer is liable in damages to the injured party to the extent of the injury.

[6] To diminish the market value of personal property held for sale is a distinct loss to the owner, and we can see no sound or just reason why recovery for such loss should be denied in actions such as here presented.

[7] So far as the question of pleading is concerned the petition avers that by reason of the publication the market value of the 43 bulls was diminished $892 per head, whereby plaintiff was damaged in the sum of $38,356. This shows that special damage was sustained and was sufficient.

We are of the further opinion that such diminution in market value is not so remote, speculative, or conjectural as to preclude recovery for the loss thus sustained. Both the pleading and the evidence show with sufficient certainty that such diminution was proximately caused by the libelous publication and the amount thereof.

These conclusions dispose of the first eleven propositions as well as propositions 12 to 25, inclusive, all of which are primarily based upon the same theory as the first eleven.

[8] Assignment 22 is the court erred in submitting to the jury question No. 4. In the brief it is erroneously assumed the assignment also complains of the submission of question No. 3. It is objected that the question submitted was upon an evidentiary issue, gave undue prominence to an evidentiary issue, and was in effect a charge upon the weight of the evidence.

[9] We think these objections untenable. Propositions 35 to 39 assert the article in question was qualifiedly privileged, and the issue as to whether it was so privileged should have been submitted.

[10, 11] The publication of defamatory matter qualifiedly privileged is nevertheless actionable if such publication is prompted by actual malice. Such malice destroys the privilege. 36 C. J. title "Libel and Slander," § 167. In response to question 2, the jury found that defendant published the article with actual malice toward the plaintiff. In view of such finding, the question of qualified privilege becomes immaterial. If such question had been submitted and found in appellant's favor it would not have affected the plaintiff's right to judgment upon the second finding.

[12] Appellant offered in evidence an article published in the San Antonio Evening News in its issue of September 27, 1924, and the testimony of the managing editor of that paper to the effect that the article was sent to his paper by a news gathering association and the Houston Chronicle had no connection with the transmission of the same. All of this evidence was excluded upon objection by appellee. The article, among other matters relating to the outbreak of the foot and mouth disease in Harris county, stated:

"A cordon of guards has been thrown around the ranches of Dr. William States Jacobs and Tom C. Dunn, Jr., where the disease was discovered. Nearly 1,200 blooded cattle were ordered killed today in order to prevent the spread of the disease." * * *

"Dr. Jacobs first noticed the disease among his cattle several days ago. He immediately notified authorities, who conducted a secret investigation. Jacobs has a herd of 450 Brahmas, it is said." * * *

"The disease may have originated, Dr. Jacobs believes, through his importation of a bull from South America recently." * * *

[13] The pertinent portion of the article is the statement that "the disease may have originated, Dr. Jacobs believes, through his importation of a bull from South America recently." Plaintiff's bulls came through Mexico from Brazil, and one reading the article in the News might readily have inferred that the bull mentioned in the News article came from plaintiff's shipment. Especially would

this be true among cattlemen interested in Brahma bulls, for the record shows no pure blood Brahmas had been imported into this country since 1903. In actions of the present nature the originator of the slander is liable only for such damage as directly and naturally results from his own act. He is not responsible for the publication of the same defamatory statements by some one else without his direction and authority. 37 C. J. 136, § 621; Newell, Slander and Libel (4th Ed.) pp. 338, 339; Burkett v. Griffith, 90 Cal. 532, 27 P. 527, 13 L. R. A. 707, 25 Am. St. Rep. 151. Since the defendant is liable only for the damage to the plaintiff which directly and naturally resulted from its own defamatory statements the excluded evidence should have been admitted for the consideration of the jury in determining the amount for which appellant is liable.

[14, 15] While testifying in his own behalf plaintiff, over objection, was asked if he knew of any reason, other than the publication in the Houston Chronicle, why the market value of his bulls was destroyed after the publication, to which he replied he did not.

In effect the question called for and the answer was but the opinion or conclusion of the plaintiff that the market value of his bulls was diminished by the statements complained of. That was a fact to be determined by the jury. There is evidence of other matters which may have affected the market value of the bulls. The testimony invaded the province of the jury. Such testimony is not reversible where the facts upon which the witness bases his conclusion are before the jury and the jury could not have been misled by it (Taylor, B. & H. Ry. Co. v. Warner (Tex. Civ. App.) 60 S. W. 442; Ry. Co. v. McElree, 16 Tex. Civ. App. 182, 41 S. W. 843; Davis v. Davis, 20 Tex. Civ. App. 310, 49 S. W. 726), but in the state of the evidence here we are not prepared to say that the testimony was harmless.

For error in this ruling upon evidence and the ruling just previously considered, the judgment will be reversed.

A number of other rulings upon evidence are complained of, none of which show error.

Reversed and remanded.