Clayton W. WILLIAMS, Jr. and
Williams Company, Appellants,

v.

Dorothy M. JENNINGS, Appellee.

No. B14–86–00170–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

May 5, 1988.

Rehearing Denied Aug. 4, 1988.

878

Eugene B. Labay, San Antonio, for appellants.

R. Tate Young, Houston, for appellee.

Before PAUL PRESSLER, SEARS and CANNON, JJ.

## OPINION

CANNON, Justice.

This is an appeal from a judgment rendered in a slander of title lawsuit. In thirty-four points of error, appellants Clayton W. Williams, Jr., and Williams Company dispute whether appellee Dorothy Jennings proved all elements of her cause of action. In addition, they contest the award of attorney's fees. We find error in the award of attorney's fees and modify the judgment to delete them. We affirm the judgment as modified.

We begin with a somewhat lengthy recitation of the facts. In 1972 Mr. and Mrs. A.D. Jennings bought 92.3 acres owned by Mr. and Mrs. Charles Brightwell in Brazos County. The Brightwells owned fifty percent of the mineral rights in the property; however, during negotiations, the real estate agent mistakenly told the Jennings that the Brightwells owned one hundred percent. He later revised that figure to fifty-one percent, which was also incorrect, but that amount was written into the earnest money contract. The Brightwells originally planned to retain fifty percent of their mineral rights. However, at closing, they agreed to sell all of their rights, and the earnest money contract was revised to read that "Seller agrees to convey all mineral rights to property in his possession." A general warranty deed was recorded on August 29, 1972. This deed contained no mineral reservation.

Concerned that the deed did not specify that the Jennings now owned fifty percent of the minerals, Jennings wrote the title company on September 12, 1972, but mistakenly asked that the deed be reformed to reserve one-half of the minerals to the Brightwells with an additional clause specifically granting one-half of all minerals to the Jennings. The requested reformation was incorrect because, according to the parties' intent, the Brightwells owned no interest, the Jennings owned fifty percent, and a Mrs. Pugh owned the remaining fifty percent. Jennings stated that the reformation was necessary because the specific mineral reservation had been inadvertently omitted during changes made in the land description at closing. The title company corrected the deed (sending Jennings a copy with the correction taped to it), and it was recorded in the Brazos County Deed Records on September 29, 1972. The reformed deed was neither re-executed nor re-acknowledged. The original filing and recording dates were crossed out and the new dates entered thereon. The following paragraph was added to the second page:

There is hereby excepted and reserved by Grantors herein one-half (½) of all the oil, gas, and other minerals produced from the above-described parcell [sic] of land. It being our intention to reserve one-half (½) of the oil, gas and other minerals and one-half (½) of the oil, gas and other minerals to pass to the Grantee herein.

This Deed is being refiled to show the above reservation.

Mrs. Jennings testified that she knew nothing about the reformed deed until 1979.

Increased drilling activity in the area in the early 1980's stimulated leasing activity. Sometime in 1980, James Frierson, a leasing broker acting on behalf of appellants, contacted the Brightwells to lease their mineral rights in the 92.3 acres that had

been sold to the Jennings. When Mr. Brightwell expressed doubt concerning their ownership of any mineral rights, Frierson assured him they owned at least fifty percent. Brightwell then sought confirmation from the real estate agent involved in the sale. The agent told him they owned fifty percent of the mineral rights at the time of the sale, conveyed one-half of that to the Jennings and thus retained twenty-five percent. The Brightwells therefore signed an oil and gas lease in April 1981 and accepted a bonus check for $5000. The lease was recorded in the Brazos County Oil and Gas Lease Records on May 29, 1981.

In the meantime the Jennings divorced, and, during the divorce proceedings, one of the lawyers suggested the reformed deed might be unclear. Jennings once again wrote the title company, pointing out that the reformed deed had neither been re-executed nor re-acknowledged and that the Brightwells owned none of the minerals. He asked for clarification of the fact that he and his wife owned one-half of all oil, gas and other minerals. The title company took no action but assured the Jennings they indeed owned one-half. Jennings obtained a copy of the earnest money contract with the intent to file it in Brazos County but never did so. The Jennings divorced in 1981, and, as part of the property settlement, Jennings conveyed his one-half community interest in the 92.3 acres to his wife. That deed was executed on June 5, 1981, and recorded on June 19, 1981.

Mrs. Jennings received offers to enter into oil and gas leases on her property, including several that did not meet her price from agents of Clayton Williams. However, she discovered the Brightwell/Williams lease and suspended existing negotiations. She then sued to clear her title. The case was tried to a jury, which found appellants liable for $23,075 in actual damages, $65,000 in exemplary damages and $12,361.81 in attorney's fees and expenses.

■ To recover in an action for slander of title, a party must allege and prove: 1) the utterings and publishing of disparaging words; 2) that they were false; 3) that they were malicious; 4) that special damages were sustained thereby; 5) that the plaintiff possessed an estate or interest in the property disparaged; and 6) the loss of a specific sale. *Clark v. Lewis,* 684 S.W.2d 161, 163–64 (Tex.App.—Corpus Christi 1984, no writ). In point of error one, appellants argue that appellee failed to prove she possessed superior title to the mineral estate at issue during the time of the Brightwell/Williams lease. In points of error two through four, appellants maintain that appellee failed to carry her burden because of their affirmative defenses of estoppel, ratification and bona fide purchaser.

Appellants' argument is predicated on the legal effect of the reformed deed. The original deed from the Brightwells to the Jennings contained no mineral reservation. The deed thus conveyed the entire estate, including the Brightwells' entire mineral interest (one-half). *See Harris v. Currie,* 142 Tex. 93, 176 S.W.2d 302, 304 (1943). This was indisputably the parties' intent. However, the reformed deed, based on Mr. Jennings' incorrect letter to the title company, reserved one-half of the Brightwells' mineral interest (or one-fourth of the total) to the Brightwells and granted one-half (also one-fourth of the total) to the Jennings. Appellants leased the Brightwells' one-fourth interest and claim that appellee cannot prove she possessed title to that interest because the reformed deed reserved it to the Brightwells.

■ The Texas Property Code requires that a conveyance of land must be in writing and must be subscribed and delivered by the conveyor. Tex.Prop.Code Ann. § 5.021 (Vernon 1984). Also, cases involving correction deeds refer to the preparation of new documents and their execution, acknowledgment and delivery. *See, e.g., Humble Oil & Refining Co. v. Clark,* 126 Tex. 262, 87 S.W.2d 471, 472 (Tex.Comm'n App. 1935, opinion adopted); *Loeffler v. King,* 149 Tex. 626, 236 S.W.2d 772, 775 (1951). Without such formalities, deeds could be changed at will without the knowledge of some parties. The reformed deed

was neither executed nor acknowledged. Indeed, the conveyors, the Brightwells, apparently knew nothing about it. Because the reformed deed did not comply with basic tenets of property law, we find that it had no legal effect. Therefore, the Jennings received the Brightwells' entire one-half mineral interest via the original deed, and appellee has proved she possessed an interest in the property at issue. Point of error one is overruled.

Appellants maintain that appellee failed to carry her burden of establishing superior title to the mineral estate at issue because of the affirmative defenses of estoppel, ratification and bona fide purchaser. In points of error three and four, they assert that the trial court erred in rendering judgment against them because the evidence established estoppel and ratification as a matter of law.

Appellants argue that appellee is estopped from claiming slander of title because when she recorded the warranty deed from her ex-husband on June 19, 1981, she knew about the reformed deed and had actual and constructive notice of the Brightwell/Williams lease recorded on May 29, 1981. Appellants also claim that the reformed deed forms a link in appellee's chain of title, and that when a grantee accepts a correcting deed, he is estopped from claiming any property embraced within the first but not the second deed and from repudiating its recitals. Appellants further argue that appellee accepted and thus ratified the reformed deed and the lease when she recorded her deed, which was made subject to the one-half mineral interest reserved by Marion Pugh (when he sold the property to the Brightwells) and to "all other conveyances, exceptions, reservations, restrictions, conditions, covenants and leases, including oil, gas and mineral leases, and all other instruments of whatever nature of record...."

■ There was no issue on estoppel submitted to the jury, and appellants do not specifically complain of its omission. In answer to the issue on ratification, the jury found that Mrs. Jennings did not ratify the Brightwell/Williams lease prior to filing

suit. In reviewing a "matter of law" point of error, we must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. If there is no evidence to support the finding, we must then further examine the entire record to see if the contrary proposition is established as a matter of law. *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex. 1982).

■ Appellee testified that she did not learn about the reformed deed until 1979 during a discussion with her estranged husband about their community property. He explained to her that the purpose of that deed was to clarify the mineral ownership. She was unhappy that he had not previously discussed his actions with her. She did not attempt to ascertain the contents of the deed but "left all that up to" her divorce attorney. There is no evidence that appellee knew of the contents or the appearance of the reformed deed when she recorded the warranty deed. Indeed, she testified that she did not actually see the reformed deed until she went to the courthouse to verify the existence of the Brightwell/Williams lease.

Mr. Jennings testified that he took no action to correct the reformed deed because he thought it was proper. It was not until during the divorce proceedings that one of the attorneys involved suggested the reformed deed might be unclear. Jennings then wrote a second letter to the title company on October 29, 1980, noting that the deed had been filed without re-acknowledgment or re-execution and with an incorrect mineral reservation. In the letter, Jennings stated that he and his wife needed to clarify that they owned one-half of the minerals and asked for the original of the earnest money contract so that he could record it. After sending the letter, he went to the title company and discussed the matter with someone who confirmed that he and his wife owned one-half of the minerals. He obtained a copy of the earnest money contract but never recorded it because, having been assured of his ownership, he thought it unimportant. Sometime in 1980 or 1981 he asked his attorneys to

clear it up but was again assured that the Brightwells had retained no interest, and no further action was taken.

■ The property at issue was joint management community property. Tex. Fam.Code Ann. §§ 5.01(b), 5.22(c) (Vernon 1975). As joint managers, neither spouse may virtually represent the other. *Williams v. Saxon*, 521 S.W.2d 88, 90 (Tex. Civ.App.—San Antonio 1975, writ ref'd n.r. e.). Thus, Mr. Jennings did not act on behalf of his wife in his efforts to correct the original deed and his acceptance of the reformed deed, particularly as he told her nothing of his actions.

■ Concerning her knowledge of the Brightwell/Williams lease, appellee testified she first found out about it in the spring of 1981 through a neighbor, who came across it while going through some records at the courthouse. Appellee immediately called Mr. Brightwell, who told her to talk to the leasing agent. She then called James Frierson to tell him he had made a "terrible mistake" and she wanted it corrected. Later, she filed suit. "Spring of 1981" is not very precise and is not evidence that appellee learned of the lease during the three-week period between its recordation on May 29 and the recordation of her warranty deed on June 19. Also, her actions indicate repudiation rather than acceptance once she discovered its existence.

■ As to appellants' argument that appellee had constructive notice of the lease when she recorded her warranty deed, we note that recording acts are intended to affect with notice only those persons who have reason to apprehend some transfer or encumbrance prior to their own as none arising afterwards can affect them or their estate in the land. *Cox v. Clay*, 237 S.W.2d 798, 804 (Tex.Civ.App.—Amarillo 1950, writ ref'd n.r.e.). The mineral lease was not a transfer or encumbrance occurring prior to appellee's ownership of the property as she actually owned it (jointly with her husband) at the time the lease was taken. As an owner, appellee had no reason to apprehend the lease.

■ Appellants also claim that appellee accepted and ratified the reformed deed and the lease when she recorded her deed. However, the latter deed specifically referred to the original deed of August 21, 1972, rather than to the reformed deed. Also, the grant to appellee is made subject to all *valid* conveyances and leases. *See Dean v. Hidalgo County Water Improvement District Number Two*, 320 S.W.2d 29, 32 (Tex.Civ.App.—San Antonio 1959, writ ref'd n.r.e.). The reformed deed has previously been determined to have no legal effect, and the mineral lease is invalid as per the original deed and the parties' intent. Finally, the cases cited by appellants in support of their ratification argument have to do with documents "which expressly recognized in clear language the validity of the lifeless deed or lease...." *Hastings v. Pichinson*, 370 S.W.2d 1, 4 (Tex.Civ.App.—San Antonio 1963, no writ). Nowhere in appellee's deed is there any reference to the Brightwell/Williams lease such as would give it life. Points of error three and four concerning estoppel and ratification are thus overruled.

■ In point of error two, appellants argue that the trial court erred in rendering judgment against them on a theory of slander of title because appellant Williams was a bona fide purchaser. A bona fide purchaser is one who acquires (apparent) legal title to property in good faith for a valuable consideration without actual or constructive notice of an infirmity in the title. *Swanson v. Grassedonio*, 647 S.W. 2d 716, 718 (Tex.App.—Corpus Christi 1982, no writ). Appellants point out that in answer to Special Issue No. 8, the jury found that at the time he purchased the Brightwell/Williams lease, appellant Williams was a bona fide purchaser for value without notice of the fact that appellee was claiming title and ownership to a full one-half interest in the minerals.

■ Despite appellee's objection, Special Issue No. 8 did not include an instruction on agency; therefore, the issue was not a controlling one. Agents represented Clayton Williams, Jr., in obtaining the mineral lease from the Brightwells.

Every purchaser of land is charged with knowledge of all facts appearing in the chain of title through which he claims that would place a reasonably prudent person on inquiry as to rights of other parties in the property conveyed. *Blocker v. Davis,* 241 S.W.2d 698, 700 (Tex.Civ.App.—Fort Worth 1951, writ ref'd n.r.e.). We have previously described the appearance of the reformed deed. An attorney employed by Williams Company testified that had he viewed the original and reformed deeds (both of which were on file in the Brazos County Deed Records), he would have been concerned that they "created an ambiguity." He also stated that the brokers should have asked the parties involved what their intent was.

The agents were thus placed on notice to make further inquiries to resolve the ambiguity, and, as will be discussed later in this opinion, this notice is imputed to Clayton Williams by virtue of the principal/agent relationship. Williams may have been a bona fide purchaser according to the definition in Special Issue No. 8 because, as he testified by deposition, he knew nothing about this particular lease. However, this finding is immaterial in view of the agency relationship involved and the fact that his agents had notice of an infirmity in the title. Furthermore, a trial court, on its own motion, may disregard a jury finding on a special issue that is immaterial. *Clear Lake City Water Authority v. Winograd,* 695 S.W.2d 632, 639 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). Point of error two is overruled.

In points of error five through fourteen, appellants address several other elements of a slander of title action. In point of error five, they argue that appellee failed to prove the uttering and publishing of words by Williams Company in the Brightwell/Williams lease disparaging her title to the property. In point of error six, they argue that she failed to prove that words uttered and published by Williams Company in the lease were false. However, these points fail because the lease stated that the Brightwells had an interest in the property, which they did not, and the

lease was recorded, which constitutes publication. *See Warner v. Winn,* 145 Tex. 302, 197 S.W.2d 338 (1946). Also, appellee's title was disparaged in that she could not enter into a mineral lease until this cloud on her title was removed. Thus, points of error five and six are overruled.

In points of error eight, nine and ten, appellants contest the legal and factual sufficiency of the evidence to support the jury's answer to Special Issue No. 1 that the execution and recording of the Brightwell/Williams lease by Clayton W. Williams, Jr., by or through an agent, was done with malice. In reviewing a "no evidence" point, we must consider only that evidence and reasonable inferences drawn therefrom in their most favorable light to support the jury's finding, disregarding all contrary evidence and inferences. *King v. Bauer,* 688 S.W.2d 845, 846 (Tex.1985). If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). In reviewing factual insufficiency points of error, we must consider and weigh all the evidence and uphold the finding unless we find that the evidence is so weak or the finding so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *Id.*

Malice as a basis for recovery of actual damages in slander of title cases has been defined to mean merely that the act must have been deliberate conduct without reasonable cause. *Walker v. Ruggles,* 540 S.W.2d 470, 473 (Tex.Civ.App.—Houston [14th Dist.] 1976, no writ); *Kidd v. Hoggett,* 331 S.W.2d 515, 518 (Tex.Civ. App.—San Antonio 1959, writ ref'd n.r.e.). In the present case, appellants had constructive notice through their agents that the reformed deed created an ambiguity and passed no title. Furthermore, when agent Frierson called Charles Brightwell about leasing the mineral rights, Brightwell alerted him to the possibility that the Brightwells no longer owned any rights. There was then sufficient time between that call and the taking of the lease for

appellant company to do a thorough check of the deed records and to contact the parties to clarify their intent. That this procedure was not followed was unreasonable under the circumstances. The evidence is both legally and factually sufficient to support a finding of deliberate conduct without reasonable cause, and points of error eight, nine and ten are overruled.

Appellants also object to the jury's answer to Special Issue No. 1 on the basis that there is insufficient evidence that appellant Williams had knowledge of and participated in any malicious act or conduct of his agent or later, with such knowledge, ratified or approved the malicious acts or conduct of the agent. Appellants maintain that the undisputed evidence reflects that James Frierson, who was deceased at the time of trial, was not their agent but was simply a contract lease broker who participated in the acquisition of the lease. In addition, he allegedly had no authority to pass on title matters.

A broker is one who is engaged by others on a commission basis and is recognized as an *agent* employed to make or negotiate bargains or contracts for the sale or lease of real estate or other property between other persons. *Burleson v. Earnest*, 153 S.W.2d 869, 873 (Tex.Civ.App.—Amarillo 1941, writ ref'd w.o.m.) (emphasis added). Mark Conway, a landman employed by Williams Company at the time of the lease, testified that Frierson was a "contract" broker paid on a day rate, who acted on behalf of Williams in obtaining leases. Whether Frierson was thus an agent or an independent contractor is dependent upon his employer's right to control his work. *See King v. Loessin*, 572 S.W.2d 87, 89 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ).

Conway testified that Frierson located tracts in Brazos County that he thought were good prospects and then contacted the owners to see if they were interested in leasing. He was given a specific price to offer and had no authority to change the offer until he cleared it with the company. He acted under Conway's authority and was to follow procedures set out by the company. Frierson was not trained to check the courthouse records, so other lease brokers employed by the company were charged with that responsibility.

Frierson's status appears to have been somewhat different from that of the company's other brokers operating in the area because he was not relied on to do mineral checks and because he occasionally received overrides on tracts. However, given the work he did for the company and for Williams and the limits placed on his authority to do that job, we are satisfied that Frierson was indeed an agent.

Furthermore, it was he who was placed on notice by Mr. Brightwell that the Brightwells might no longer own the mineral rights involved. Also, we must not overlook the fact that although Frierson was not authorized to pass on title matters, someone from the company did check the records (if normal procedures were followed) and was put on notice by the appearance of the original and reformed deeds that the allocation of the mineral interests was ambiguous. If an agent's acts are within the scope of his authority and are related to matters over which such authority extends, notice to the agent is then deemed to be notice to the principal. In this connection, it is immaterial that the principal has not actually been informed of the particular facts under consideration, and a principal may be deemed to be bound by knowledge that his agent, by the use of ordinary care, could have acquired, especially where the agent has information sufficient to instigate an inquiry. 3 Tex.Jur.3d *Agency* §§ 176, 177 (1980).

Finally, appellants honored the bank draft to the Brightwells, which implies ratification of the lease and the steps taken to obtain it. We find there is sufficient evidence to support the jury's answer to Special Issue No. 1, and we overrule point of error eleven.

The jury also found in answer to Special Issue No. 1 that appellant Williams' delay in releasing the Brightwell/Williams lease was done with malice. In points of error

seven and twelve through fourteen, appellants argue that appellee failed to prove Williams had a legal duty to release and that the evidence is legally and factually insufficient to support the finding of malice.

Appellee discovered the existence of the Brightwell/Williams lease in 1981 and immediately contacted Mr. Brightwell and agent Frierson. On May 20, 1982, Clayton Williams, Jr., and his wife executed a release of the lease. However, it was not received by appellee's attorney until August 1, 1983. There was no explanation for either delay. The effect of the recorded mineral lease was to cloud appellee's title to the property and prevent her from leasing it. As of May 20, 1982, appellant Williams recognized a duty to release the lease when he executed the release. Yet, he delayed forwarding the release for over fourteen months, during which time appellee continued to be damaged. The jury thus had before it sufficient evidence of deliberate conduct without reasonable cause to support a finding of malice. Points of error seven and twelve through fourteen are overruled.

The next group of points of error is concerned with the jury's finding of actual damages in answer to Special Issue No. 2. One of the elements that a plaintiff must prove in a slander of title action is that special damages were sustained. *Clark v. Lewis,* 684 S.W.2d at 163. Special damages are those damages proximately, naturally and reasonably resulting from the alleged slander. *Houston Chronicle Publishing Co. v. Martin,* 5 S.W.2d 170, 173 (Tex.Civ.App.—El Paso 1928, dism'd w.o.j.). In addition, the plaintiff must prove the loss of a specific sale, *i.e.,* that a pending sale was defeated by the slander. *A.H. Belo Corp. v. Sanders,* 632 S.W.2d 145, 146 (Tex.1982) citing *Shell Oil Co. v. Howth,* 138 Tex. 357, 159 S.W.2d 483, 490 (1942); *see also Ellis v. Waldrop,* 656 S.W. 2d 902, 905 (Tex.1983). In point of error fifteen, appellants argue that appellee failed to prove that she sustained special damages.

Appellee testified that she received several offers to lease her mineral rights and verbally agreed to accept an offer from a Mr. Berry of Dallas for a bonus payment of $450 an acre and a one-fourth royalty. This lease was not signed, however, as Berry was called out of the country on other business. By the time he returned several months later, appellee had discovered the existence of the Brightwell/Williams lease and determined that she could not enter into a lease of her own. Thus, she sustained special damages through the loss of the bonus payments and royalty provisions. As there was a party identified by name who was ready, willing and able to lease the property, appellee also proved the loss of a specific sale. *See A.H. Belo Corp.,* 632 S.W.2d at 145; *Houston Chronicle Publishing Co.,* 5 S.W.2d at 173. Appellants argue that evidence of an unaccepted offer to purchase made by one not a party to the suit is inadmissible. However, the cases cited in support of their argument have to do with the value of land in a condemnation suit. Furthermore, appellee testified that she had verbally accepted Berry's offer.

Appellants also argue in point of error fifteen that appellee failed to prove Williams Company had notice that she would suffer special damages. However, we are unable to find that such notice is an element of a slander of title action. *See* 50 Tex.Jur.3d *Libel and Slander* §§ 226–240 (Unreplaced Tex.Jur.2d Topics, Binder # 2, 1987). The cases cited by appellant are not slander of title cases but rather deal with damages sustained by the unauthorized blocking of a highway and tortious interference with a contract. Point of error fifteen is thus overruled.

In points of error sixteen through eighteen, appellants contest the legal and factual sufficiency of the evidence to support the jury's answer to Special Issue No. 2 that $23,075 would compensate appellee for actual damages sustained by her. In point of error nineteen, they complain that the amount is excessive under the facts and circumstances of the case.

In a slander of title case resulting in the loss of an oil lease, a plaintiff may recover the amount for which he could and would have sold the lease, had the sale not been frustrated, less the amount for which he could have sold a lease on the land at the time of the trial with the cloud removed. *Reaugh v. McCollum Exploration Co.*, 139 Tex. 485, 163 S.W.2d 620, 622 (1942). Appellee's expert, petroleum landman Jack Brogden, testified that bonuses on oil and gas leases ranged from $25 per acre, in the early days of the oil "boom" in that area, to $700 per acre at its peak in 1983. By 1981 the minimum price was $200 per acre, and in the Wellborn area, where appellee's property was located, an operator could expect to have to pay $500. Brogden also testified that there was no leasing going on in the area at the time of trial, and if appellee wanted to lease her property, there were no buyers. Appellants offered no contradicting evidence.

The $23,075 figure found by the jury represents a bonus payment of $500 per acre for appellee's one-half mineral interest in the 92.3 acres, with no deduction for a potential lease at time of trial. This figure is supported by Brogden's testimony concerning the range of payments and the dearth of leasing opportunities at the time of trial and is not excessive. Points of error sixteen through nineteen are overruled.

Point of error twenty concerns whether Williams Company had notice that appellee would suffer the loss of lease bonus offers because of the Brightwell/Williams lease or any delay in its release. As previously stated, however, such notice is not an element of a slander of title case, and this point also is overruled.

Appellants argue in point of error twenty-one that the trial court erred in admitting into evidence appellee's testimony of verbal lease offers that she received from Mr. Berry and a Mr. Wilhite. Appellants claim this evidence is hearsay. Many out-of-court statements do not constitute hearsay. The fact that the words were uttered is sometimes the fact to be established. Such testimony is received because the mere utterance of the words has legal significance. *Irving Lumber Co. v. Alltex Mortgage Co.*, 446 S.W.2d 64, 71 (Tex.Civ. App.—Dallas 1969, *aff'd on other grounds*, 468 S.W.2d 341 (Tex.1971). Most obviously this is true where the words proven constitute a necessary part of the cause of action or defense, or as is sometimes said, are "operative" facts, or part of the "ultimate issue." IA R. Ray, Texas Law of Evidence Civil and Criminal § 795 (Texas Practice 3d ed. 1980).

A necessary element of appellee's case was the loss of a specific sale. Her statements concerning the lease offers were admitted not to prove the truth of their terms but to prove their utterance and thus that such a sale existed. *See also Yellow Freight System, Inc. v. North American Cabinet Corp.*, 670 S.W.2d 387, 390 (Tex. App.—Texarkana 1984, no writ). The evidence was not hearsay, and point of error twenty-one is overruled.

Appellants next complain that the trial court erred in rendering prejudgment interest from May 29, 1981, because the evidence is factually insufficient to support an implied finding that appellee's actual damages accrued on that date. The jury found in answer to Special Issue No. 2 that $23,075 would compensate appellee for actual damages sustained as a result of the execution and recording (on May 29, 1981) of the Brightwell/Williams lease or any delay in its release. The jury received the following instruction concerning those damages: Do not include any amount for actual damages resulting from the failure, if any, of Dorothy M. Jennings to take reasonable steps to mitigate her damages, as would have been done by a person of ordinary prudence under the same or similar circumstances. Apparently, the jury did not find failure to mitigate. Appellants argue that appellee's failure to record the release sent to her attorney in August 1983, and then lease her mineral interest while leases were still being taken shows otherwise.

Evidently, appellants felt they could resolve the dispute with appellee merely by

sending her attorney a release. The attorney testified, however, that he did not tell appellee about the release until several months prior to trial in 1985 because it was unsolicited and appeared not to be a proper release. Appellee testified that she could not remember whether she had been shown a copy of the release during her deposition in November 1983. There was also evidence that appellants could have recorded the release themselves. The jury seems to have determined that whatever duty appellee had to mitigate, she was not required to record the release. Based on the above, we cannot say the evidence does not support the implied finding. Point of error thirty-two is overruled.

In response to Special Issues Nos. 3 and 4, the jury found that Clayton W. Williams, Jr., acted with malice as to the release of the Brightwell/Williams lease and, based on that answer, fixed the amount of exemplary damages at $65,000. Malice was defined as acting with ill will, bad or evil motive, or such gross indifference to the rights of the plaintiff as to amount to a willful and wanton act. In points of error twenty-two through twenty-nine, appellants contest the legal and factual sufficiency of the evidence to support the answers to these special issues. In addition, they complain that the exemplary damages are excessive and that there is insufficient evidence that appellant Williams had knowledge of and participated in any malicious act or conduct of his agent or afterwards, with such knowledge, ratified or approved the malicious acts or conduct of the agent. Having reviewed the evidence according to the standards set out earlier in this opinion, we disagree with appellants' contentions.

The conduct in question has to do with the delay in the release of the Brightwell/Williams lease. At some point in the year following the recording of the lease, appellants must have realized there were problems associated with it because they endeavored to release it by executing a document (with the signatures of appellant Williams and his wife) on May 20, 1982. However, appellants did not record the document as they could have under the terms of the lease nor did they immediately forward it to the Brightwells or to appellee. Indeed, the release was not sent to appellee's attorney for well over another year. This evidence supports the jury's finding of conduct with such gross indifference to the rights of plaintiff as to amount to a willful and wanton act.

Williams' liability, through his agent, has already been discussed. Furthermore, in spite of the wording of Special Issue No. 3 (asking if, in connection with the execution and recording of the Brightwell/Williams lease, or the delay, if any, in its release, any of the defendants, individually or *by or through an agent*, acted with malice), agency appears to be irrelevant regarding the release. At the least by October 1981, when the lawsuit was filed, appellants had notice of the problem and had the power to resolve it.

Appellee requested exemplary damages in the amount of $125,000 from appellant Williams and $125,000 and $10,000, respectively, from Mr. and Mrs. Brightwell. The jury awarded her $65,000 from Williams. Exemplary damages must be reasonably proportioned to actual damages, though there is no set rule or ratio that will be considered reasonable. *Alamo National Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex.1981). The exemplary damages in this case are slightly less than three times the actual damages and are considerably less than those requested by appellee. Points of error twenty-two through twenty-nine are overruled.

In answer to Special Issue No. 5, the jury awarded appellee $12,361.81 in attorney's fees and expenses. In points of error thirty and thirty-one, appellants argue that attorney's fees are not recoverable in a slander of title action and further argue that this award, in tandem with the exemplary damages, allows an impermissible double recovery.

The generally prevailing rule is that attorney's fees are not recoverable in a slander of title action. *American National Bank & Trust Co. v. First Wisconsin Mortgage Trust*, 577 S.W.2d 312, 319–20

(Tex.Civ.App.—Beaumont 1979, writ ref'd n.r.e.). Appellee contends, however, that attorney's fees can be considered in determining exemplary damages and that those cases cited by appellants in support of non-recovery did not involve an award of exemplary damages at the trial court level. Contrary to appellee's argument, *American National* did involve such an award, and the court of appeals in that case specifically chose to follow the prevailing rule. We agree and sustain appellants' points of error thirty and thirty-one. Consequently, we modify the trial court's judgment to delete the award of attorney's fees against Clayton W. Williams, Jr.

Finally, in points of error thirty-three and thirty-four, appellants argue that appellee failed to prove all of the essential elements of her cause of action for slander of title and that the jury findings will not support any money judgment in her favor. Based on the foregoing discussion, we find otherwise and overrule these points. We affirm the judgment of the trial court with the modification regarding attorney's fees.

SEARS, Justice, dissenting.

I respectfully dissent from the majority opinion.

Appellee testified that she learned about the reformed deed in 1979. Appellant's lease with Brightwell was not executed or recorded until 1981. Mr. Jennings testified that he took no action to correct the reformed deed because he thought it was proper. He was assured by the title company that he and the Appellee owned one-half of the minerals and he was assured by his attorneys that the Brightwells retained no mineral interest in the property. Therefore, only the Appellant was unaware of any problems that existed with the reformed deed and unaware that there was no intent between the Brightwells and the Jennings to reserve any mineral interest in the land conveyed. If the doctrine of latches or estoppel would apply to a cause of action by Mr. Jennings against the Appellant, then Mrs. Jennings cannot avoid those defenses by claiming blindness and ignorance.

Mr. Jennings had a copy of the reformed deed and he advised his wife of the existence of the reformed deed as early as 1979. Therefore, Appellee had actual knowledge of the existence of the reformed deed prior to Appellant executing a lease on the land. Further, Appellant's lease with Brightwell was recorded on May 29, 1981. Subsequently, the deed conveying Mr. Jennings' interest in the land to Mrs. Jennings was executed on June 5, 1981, and it was recorded on June 19, 1981. There was a specific recitation in that deed which conveyed property to Appellee, "Subject to ... oil and gas leases ..." Also, at the time Appellant's lease was executed and recorded, the character of the property was community property owned jointly by Mr. and Mrs. Jennings. The majority opinion imputes to Clayton Williams knowledge of the acts of the leasing agent, yet the majority opinion contends that the wife is not to be held accountable for the knowledge of her husband with regard to the community property. This is illogical and is not a correct statement of the law of this state.

There is no doubt that Mr. Jennings was dealing with the attorneys and the title company, with regard to the property in question, with the full knowledge and consent of Mrs. Jennings. It is well settled in Texas that when spouses are living together, and acting in the best interest of both, one spouse may act as the agent of the other and knowledge of the acts of the agent spouse are imputed to the principal spouse. *Walling v. Hannig*, 73 Tex. 580, 11 S.W. 547, 548 (Tex.1889). Further, agency between spouses can be imputed by their acts and conduct. *Walling v. Hannig*, 11 S.W. at 548.

This appeal is similar to *Outlaw v. Bowen*, 285 S.W.2d 280 (Tex.Civ.App. Amarillo 1955, writ ref'd n.r.e.). In *Outlaw*, the issues also involved a mineral interest in the land, and the court held that the wife cannot disassociate herself from the agreement, acts, conversations and negotiations of the husband as her agent, and at the same time receive and enjoy benefits therefrom. *Outlaw v. Bowen*, 285 S.W.2d at 286. Further, a wife is bound by the acts

of her husband when he is acting in her behalf, and she cannot accept that which is to her advantage and reject that which imposes a burden on her. *Outlaw v. Bowen,* 285 S.W.2d at 286; *Smith v. Olivarri,* 127 S.W. 235, 238 (Tex.Civ.App.1910, writ dism'd). Finally, when the husband is acting for the wife, she cannot benefit by claimed ignorance. *Allen v. Garrison,* 92 Tex. 546, 50 S.W. 335, 336 (Tex.1899).

The jury found that the Appellant was a bona fide purchaser for value without notice of the fact that Appellee was claiming title and ownership to a full one-fourth interest in the minerals. Yet, the majority opinion contends that the issue failed to include an instruction on agency and was therefore to be disregarded as it was not a controlling issue. The majority fails to cite any authority for that conclusion.

The majority opinion holds that malice is recoverable where the acts are shown to have been deliberate and without reasonable cause. The majority opinion then states that the "Appellants had constructive notice through their agents that the reformed deed created an ambiguity and passed no title." Again, the majority fails to cite authority to support the contention that because a deed contains an ambiguity it passes no title. Although the majority opinion discusses the conversations of the leasing agent, Frierson, with Brightwell, to the effect that Brightwell may not own any mineral interest, the opinion fails to show any testimony or evidence that the information learned in any of these conversations was transmitted by Frierson to the Appellant. In the absence of any proof that the Appellant had any actual knowledge of these defects, there is no proof that Appellant acted in a malicious manner. Therefore, Appellant should not be liable for punitive damages. The majority opinion goes to great lengths to establish the control that Appellant had over Frierson in an effort to establish the agency relationship, in an effort to impute *implied* knowledge, and in an effort to establish malice; however, the evidence is weaker than second-hand tea.

As to special damages, the majority opinion relies solely on the testimony of the Appellee that she received a *verbal* offer from a "Mr. Berry" to pay a lease bonus of four hundred and fifty dollars an acre plus a one-fourth overriding royalty. However, the majority opinion goes on to show that *no lease was executed* because Mr. Berry was out of this country on other business. There is no showing that Mr. Berry ever returned to this country or that he renewed his offer if he did return to this country. Appellee testified that subsequent to the discovery of the Appellant's lease she *unilaterally* determined that she could not enter into a lease on her own. Therefore, based on the testimony of the Appellee it is clear that there was no lost sale. The alleged verbal offer to lease was never consummated. No subsequent sale was offered or lost because the Appellee made the decision that she could not execute a lease. Clearly, Appellee fails in her burden of proof of a specific sale and of special damages; therefore, exemplary damages cannot be found.[1] The majority opinion totally ignores that evidence which establishes that the Appellant, upon discovery of the problems existing in the reformed deed upon which the lease was executed with Brightwell, offered to work things out with Appellee, and, that Appellee refused because she thought she could get more money by way of her lawsuit.

In dealing with special damages, even though the only proof of any offer to lease Appellee's property was for a price of four hundred and fifty dollars an acre, the majority opinion nonetheless justified the twenty-three thousand and seventy-five dollars awarded by the jury on the basis that five hundred dollars an acre was *reasonable* at that point in time. The special damages assessed as a result of the loss of a sale cannot be measured by what is reasonable in the industry, but must be measured by the actual loss incurred by the Appellee. Therefore, I would hold that there is no evidence to support a finding of a specific loss of sale or special damages sustained by the Appellee.

1. *Bellefonte Underwriters Insurance Company v.* *Brown,* 704 S.W.2d 742, 745 (Tex.1986).

The majority opinion cites *Yellow Freight System, Inc.*[2] for the proposition that Appellee's testimony concerning the verbal offer to lease the land was not hearsay. However, the *Yellow Freight System, Inc.* case dealt solely with oral negotiations *between the parties to the lawsuit* and/or agents of parties to the lawsuit. Yellow Freight contended there was no valid oral agreement because the parties had failed to agree upon a value, and, that the testimony of North American's official regarding the agreement was hearsay. The case is significantly different from the facts of this appeal. In *Yellow Freight System, Inc.*, the parties to the lawsuit agreed that they had entered into oral negotiations, but one side contended it was not a contract solely on the grounds that they had not agreed upon a price. That court held: "Since there was evidence of an oral agreement, and since a reasonable price could be presumed, the trial court's findings of a contract ... are supported by the evidence." *Yellow Freight System, Inc. v. North American Cabinet Corp.*, 670 S.W.2d at 390. The *Yellow Freight System, Inc.* court even noted that because one party to the lawsuit testified about conversations with the other party's agent or representative, it would be admissible even if the hearsay testimony was admitted for its truth. The majority opinion overlooks the fact that the *Yellow Freight System, Inc.* reasoning is inapplicable because Appellee was not talking to an agent or representative of the Appellant. The majority opinion also overlooks the fact that the Appellee's hearsay testimony was offered not for the purpose of proving up a missing element of the contract, but for the purpose of proving the contract itself.

The majority opinion also cites *Irving Lumber Company.*[3] The *Irving Lumber Company* case involved statutory liens on the construction of residential homes. Irving Lumber contended that they entered into oral contracts with Alltex Mortgage Company to furnish the materials neces-

sary to complete residential homes to be built on vacant lots. Irving Lumber also contended that although construction of the homes was to be completed in three different stages, the oral contract obligated the parties only as to the first two of the three stages. That court concluded that the testimony of the agent of Irving Lumber was not hearsay as to Alltex Mortgage Company because the testimony "together with exhibits numbers 8, 9, and 12, showed the oral contracts ...." *Irving Lumber Company v. Alltex Mortgage Company*, 446 S.W.2d at 71. The exhibits alluded to by the court listed four lots, separate plans for each lot, the date the plans were ordered, the contract price for each lot and the date the labor and materials were furnished to each lot. Obviously, the court found that the testimony, *together with the evidence* in exhibits 8, 9, and 12, showed that the parties had entered into an oral contract. Also, that court expressly held "evidence of an out of court statement is not hearsay *unless it is offered as proof of the fact asserted.*" *Irving Lumber Company v. Alltex Mortgage Company*, 446 S.W.2d at 71. (Emphasis added.) Clearly, the authority relied upon in the majority opinion does not support the conclusion that the testimony of Appellee regarding the oral contract of sale was not hearsay. In fact, the law as shown above is to the contrary.

At best, the evidence shows that Appellee may have had *conversations* concerning a mineral lease on her land. There is no competent evidence of any contract for a lease; therefore, there is no competent evidence of any loss of a specific sale. As mentioned earlier in this dissenting opinion, even if we took the hearsay testimony as admissible and as true, Appellee has still failed to establish the existence of a contract or the loss of a *specific sale*. Therefore, damages for slander of title cannot be assessed against Appellee. *A.H. Belo Corporation v. Sanders*, 632 S.W.2d 145, 146 (Tex.1982).

2. *Yellow Freight System, Inc. v. North American Cabinet Corp.*, 670 S.W.2d 387, 390 (Tex.App.—Texarkana 1984, no writ).

3. *Irving Lumber Company v. Alltex Mortgage Company*, 446 S.W.2d 64 (Tex.Civ.App.—Dallas 1969), *aff'd* 468 S.W.2d 341 (Tex.1971).

Appellant testified that following his unsuccessful attempts to negotiate with Appellee, he executed a release of his lease on the property and sent the release to the attorney for Appellee in August of 1983. However, to this date there is no evidence that the release was ever recorded by the Appellee, nor is there any evidence of any attempt by Appellee to lease her land after receiving the release from the Appellant. Appellee's expert witness testified that the oil boom reached its peak in 1983 and that owners of mineral estates were then receiving seven hundred dollars per acre as a leasing bonus. Therefore, according to Appellee's own witness, she could have received sixty-four thousand, six hundred and ten dollars ($64,610.00) had she leased her land *after* Appellee executed a release. Obviously, as Appellee testified, she felt she could get more money by pursuing her lawsuit. Yet, the facts show that if she had leased her land in an attempt to mitigate damages, she would have received more money than she alleged she lost.

I would hold that Appellee has failed in her burden to establish the loss of a specific sale, that there is no evidence of malice on the part of Appellant, and I would reverse and render the judgment to the trial court with instructions that a judgment be entered that Appellee take nothing.